(No. 69130.— )

THE COUNTY OF BUREAU *et al.*, Appellees, v. JAMES R. THOMPSON, Governor, *et al.*, Appellants.

*Opinion filed November 30, 1990.*

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellants.

Larry Vandersnick, State's Attorney, of Cambridge, Gary L. Spencer, State's Attorney, of Morrison, Marc P. Bernabei, State's Attorney, of Princeton, and Kenneth R. Boyle, Robert J. Biderman and David E. Mannchen, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, for appellees.

JUSTICE STAMOS delivered the opinion of the court:

The circuit court of Bureau County has adjudged that section 4 of the Illinois and Mississippi Canal State Park Act (Ill. Rev. Stat. 1987, ch. 105, par. 482d) (the Canal

Park Act) violates provisions of the Illinois Constitution (Ill. Const. 1970, art. I, §2; art. IV, §13). Defendants have appealed directly to this court (107 Ill. 2d R. 302(a)) for reversal of the circuit court's judgment. We conclude that section 4 of the Canal Park Act is valid under the Illinois Constitution, and therefore we reverse.

## FACTS

Section 4 of the Canal Park Act imposes upon plaintiffs, certain local governmental entities, the obligation of maintaining some 50 bridges that pass over the Illinois and Mississippi Canal, which is now a State park by virtue of the Canal Park Act (Ill. Rev. Stat. 1987, ch. 105, par. 482d); the bridges in issue connect public roads which plaintiffs are responsible for maintaining. Plaintiffs are the counties of Bureau, Whiteside, and Henry, and the commissioners of highways of the townships of Annawan, Alba, Arispie, Atkinson, Colona, Concord, Edford, Fairfield, Gold, Indiantown, Geneseo, Leepertown, Montmorency, Mineral, Tampico, and Wyanet. Plaintiff townships are responsible for the maintenance and repair of all roads and bridges within their respective jurisdictions, while plaintiff counties share in road and bridge maintenance projects undertaken by those townships located within each county's boundaries when the cost of a project exceeds $1,000. Defendants are James R. Thompson, Governor of the State of Illinois; the Department of Conservation (which manages the canal as a State park) and Mark Frech, the Director of Conservation; and the Department of Transportation and Gregory Baise, the former Secretary of Transportation.

The history of the canal and the bridges upon which this litigation centers extends into the last century. The canal connects the Illinois and Mississippi Rivers and was built in order to provide an efficient and economical means of transporting goods between the Great Lakes

region and those territories adjacent to the Mississippi River. The United States Congress authorized the Secretary of War to construct the canal and, in the process of doing so, to acquire title to all lands through which the canal would pass. As the canal was to intersect a number of public roads, between 1896 and 1900 the Federal government, by means of condemnation suits, secured title to each parcel of land upon which a public road currently passed and across which the canal would be dug. Each of the condemnation decrees declared, with minimal variation, that "the United States shall build and Maintain good and sufficient Bridges and Also build and Maintain proper and safe approaches thereto over and across the said Canal, upon the public Highways crossing [the lots described] for the safe and convenient Passage thereover at all times *** of Teams and vehicles" (*United States v. Maxson* (N.D. Ill. 1898), No. 9118). In addition, the Federal government was ordered to pay $1 for each parcel of land taken. The canal was opened to navigation in 1907.

Regrettably, the canal quickly proved to be a commercial disappointment; it was obsolete within a few decades of being built. At this point, the United States began casting about for a method of disposing of the canal. The State of Illinois expressed interest in acquiring the canal for recreational purposes, and the Federal and State governments began lengthy negotiations regarding transfer of the canal to the State.

In 1955, the General Assembly enacted the Canal Park Act (Ill. Rev. Stat. 1955, ch. 105, par. 482a *et seq.*). Section 3 of the Canal Park Act authorizes the Department of Conservation to accept title to the canal in fee simple absolute from the United States by means of a quitclaim deed once the United States has fulfilled conditions as set out in section 1 of the Canal Park Act (Ill. Rev. Stat. 1955, ch. 105, par. 482a). (Ill. Rev. Stat. 1955,

ch. 105, par. 482c.) Once title is accepted, the Department of Conservation is to manage the canal as a State park, with the following relevant condition:

"except that (a) each bridge which connects sections of a road which is part of the system of State highdays [*sic*], and any approach to such a bridge, shall become part of such system of State highways; (b) each other public road section or bridge, unless designated by the Department of Conservation as an access road or driveway of the Park, shall be maintained by the governmental unit which maintains the road of which such section or bridge is a part ***." (Ill. Rev. Stat. 1955, ch. 105, par. 482d.)

Not until August 4, 1970, did the State of Illinois accept title to the canal by quitclaim deed.

Since before the Canal Park Act was enacted in 1955 until the present, plaintiffs, the local governments which section 4(b) of the Act, as quoted, makes responsible for maintaining some 50 canal bridges, have informed the State that they are unwilling to shoulder the heavy financial burden of maintaining these bridges. Still, when the State accepted title to the canal and made it into a State park, it was faced with the dilemma of providing for the maintenance of a large number of aging bridges which the United States no longer had the duty to maintain. The State's solution was to assume responsibility itself for those bridges which connected with State highways and to impose responsibility for the remaining bridges on those local governments that were already responsible for maintaining the roads that connected with those bridges. (Ill. Rev. Stat. 1955, ch. 105, par. 482d.) Thus, as a result of negotiations between the United States and the State of Illinois, plaintiffs are now required to maintain a large number of these aging bridges which they had not built and over the building of which they had had no influence, for the United States had

built them in the exercise of its formidable power of eminent domain. Over the years, an unspecified number of these bridges have been replaced by culverts, on top of which roads have been laid. Yet plaintiffs are as opposed to undertaking the obligation of maintaining the culverts as they are the bridges. (As the parties have used the word "bridges" to refer also to the culverts, and have not made the distinctions between the two structures an issue in this case, this opinion will do the same.) For a more detailed history of the canal and its bridges, see *Commissioners of Highways v. United States* (N.D. Ill. 1979), 466 F. Supp. 745, 748-56.

Through the present cause of action plaintiffs seek to be absolved of this burden of bridge maintenance by a judgment that section 4 of the Act violates the equal protection and special legislation provisions of the Illinois Constitution (Ill. Const. 1970, art. I, §2; art. IV, §13). Whether or not the plaintiffs' being saddled with the significant financial burden of maintaining these bridges seems fair, we are only to decide whether the imposition of this burden by the State violates the equal protection or special legislation provisions of the State constitution.

Before filing the present cause of action in the circuit court, plaintiffs pursued a cause of action against defendants' predecessors in interest and the United States in Federal court. (*Commissioners of Highways v. United States* (N.D. Ill. 1979), 466 F. Supp. 745, *aff'd in part & rev'd in part* (7th Cir. 1981), 653 F.2d 292.) In the Federal action, plaintiffs sought a declaratory judgment that the United States has a continuing obligation to maintain the bridges at issue and that section 4 of the Canal Park Act violates the special legislation and equal protection provisions of the Illinois Constitution; in addition, plaintiffs sought an injunction barring enforcement of section 4 by State officials. The district court held

that when the United States transferred title to the canal to the State of Illinois in August 1970 by quitclaim deed, the United States also transferred to the State all of its future bridge maintenance obligations. *Commissioners of Highways*, 466 F. Supp. at 766.

Concerning the State constitutional claims (which the district court considered pursuant to the doctrine of pendent jurisdiction), the district court held that plaintiffs are not denied equal protection because the law and policy of Illinois impose a duty on all local governments which maintain public roads to also maintain any bridges that are a part of those roads. In the district court's opinion, it is beside the point that the parties have agreed that plaintiffs are the only local governmental entities required by State law to maintain bridges located in State parks (*Commissioners of Highways*, 466 F. Supp. at 768); because plaintiffs had failed to show that there was even a single Illinois county or township that maintained a public road but did not maintain a bridge that was a part of the road, the district court found insignificant the fact that these particular bridges were located in a State park. In other words, plaintiffs had failed to prove that the fact that these bridges happened to be located in a State park resulted in plaintiffs' being assigned an obligation any more extensive than the obligation of maintaining bridges that are a part of public roads, which is imposed on all Illinois counties and townships: "Plaintiffs have shown no more than that although the bridges [that] §482d requires them to maintain are in a state park, they are under the same duty as all other counties and other township commissioners of highways" (*Commissioners of Highways*, 466 F. Supp. at 769).

The only relief the district court granted plaintiffs was a damages award, to be paid by the United States, as compensation for the United States' failure to ade-

quately maintain the bridges at issue between 1945 and the canal's transfer to the State in 1970. *Commissioners of Highways v. United States* (N.D. Ill. Apr. 29, 1980), No. 74—C—1861, slip op. at 7-12 (order specifying method and amount of payment by United States to plaintiffs and addressing other matters raised by parties' motions), *modifying and enforcing prior findings* (N.D. Ill. 1979), 466 F. Supp. 745, 767.

Even though the district court held that the special legislation and equal protection provisions of the Illinois Constitution are not violated by section 4 of the Canal Park Act, the district court entered an involuntary dismissal of these claims without prejudice. (*Commissioners of Highways v. United States* (N.D. Ill. Apr. 29, 1980), No. 74—C—1861, slip op. at 6, *modifying and enforcing prior findings* (N.D. Ill. 1979), 466 F. Supp. 745, 769.) Thus, plaintiffs became able to present their State constitutional claims to the Illinois courts.

On appeal, the United States Court of Appeals for the Seventh Circuit held that by operation of State and Federal legislation the Federal government's obligation to maintain these bridges had indeed terminated when the State accepted title to the canal by quitclaim deed in 1970. (*Commissioners of Highways v. United States* (7th Cir. 1981), 653 F.2d 292, 295 (disapproving district court's covenant-running-with-the-land rationale).) The Seventh Circuit further explained that the United States Constitution does not prohibit the State of Illinois from taking, without compensation, the property of municipal corporations which the State had created. (*Commissioners of Highways*, 653 F.2d at 296-97.) Consequently, the court explained, plaintiffs' only recourse is to search the Illinois Constitution for relief from the bridge maintenance obligations imposed by section 4 of the Canal Park Act, a matter which was not before the Seventh Circuit

on appeal. *Commissioners of Highways*, 653 F.2d at 297 & n.4.

Plaintiffs presented their State equal protection and special legislation claims to the circuit court of Bureau County in 1982. In addition to seeking a declaration that section 4 is unconstitutional, plaintiffs sought to have the circuit court enjoin defendants from enforcing the statute.

The parties entered into a stipulation on June 7, 1988, regarding significant facts in this case. The stipulation reads in part:

> "1. *** [W]here a county or township has built and maintained a bridge at a geographic location and that geographic location subsequently becomes a part of a state park, such county or township will ordinarily continue to maintain the bridge after the geographic location becomes part of the state park.
>
> 2. With the exception of the application of [section 4 of the Canal Park Act] to the Illinois-Mississippi Canal State Park, there are no situations in Illinois in which a county or township has been or is required by state law to assume, upon the creation of a state park, the maintenance of and/or the responsibility for structures within such state park that existed before the creation of the state park but that were not the responsibility of, or owned or maintained by, such county or township before the creation of the state park."

No county or township governments have ever been required to maintain bridges located in a State park if maintenance of those bridges was not their responsibility before the State park was created. However, section 4 of the Canal Park Act requires plaintiffs to maintain bridges that are now located within the Canal Park but which they did not maintain before the Canal Park was created. (In a situation apparently unique in Illinois, they were previously maintained by the United States, not by the State of Illinois or by any governmental entities cre-

ated by the State.) The question thus raised is whether plaintiffs have been denied equal protection.

Both defendants and plaintiffs moved for summary judgment in the circuit court; faced with these competing motions, the circuit court granted plaintiffs' motion and denied that of defendants. The circuit court found that no genuine issue of material fact existed and that, as a matter of law, section 4 of the Canal Park Act violates both the equal protection and the special legislation provisions of the Illinois Constitution (Ill. Const. 1970, art. I, §2; art. IV, §13). The circuit court found that section 4 is a special law because more general laws concerning maintenance of structures in State parks are applicable, or could be made applicable, to the Canal Park, and because the citizens of all counties and townships other than plaintiffs are accorded the special benefit of not having to contribute to the maintenance of these bridges located in a State park. In addition, the circuit court found that section 4 deprives plaintiffs of equal protection of the laws because the statute imposes upon them a special burden not imposed on similarly situated governmental entities—the burden of maintaining bridges now located in a State park though they had no such burden before the State park was created and though no other counties and townships have to maintain structures in a State park that they did not maintain prior to the park's creation.

## ANALYSIS

Determining whether a law constitutes special legislation or denies equal protection entails consideration of classifications allegedly created or not created by the law and whether the creation of those classifications is justified because they are sufficiently related to achieving the legitimate governmental interests expressed in the law. The present dispute has resulted in the parties' arguing

that section 4 of the Canal Park Act and the circumstances surrounding the canal's construction and transfer to the State have created a variety of categories. This court's task is to determine which of those classifications are relevant, whether the relevant categories are sufficiently related to a legitimate governmental interest, and, consequently, whether section 4 is constitutional.

The concepts of equal protection and special legislation are closely related in Illinois law. Because of this close relationship between the two concepts, we will discuss in concert plaintiffs' claim that section 4 violates both the equal protection and special legislation provisions of the Illinois Constitution.

Under Illinois constitutional law, a person or class of persons is denied equal protection by a State statute when the statute arbitrarily discriminates against that person or class of persons by withholding some benefit or privilege which the State gives to all others. (*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 237; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 367.) In this case, neither party has argued that section 4 affects a fundamental right or discriminates against a suspect class. In such circumstances, the discrimination created by the classifications imposed by the statute is arbitrary, and therefore unconstitutional, only if there is no reasonable basis for the classification—*i.e.*, if the classification of one group of persons as those to whom a certain privilege is denied is not rationally related to the statute's legitimate goal. (*Bilyk*, 125 Ill. 2d at 237; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 371; *Chicago National League Ball Club*, 108 Ill. 2d at 367; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120-21.) In other words, if the statute's legitimate goal can, with comparable facility, be achieved without classifying persons, the classifications created by the

statute deny some persons equal protection of the laws and render the statute invalid.

By contrast, "[t]he proscription against special legislation in the Constitution of Illinois prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or class to the exclusion of others similarly situated. In short, it prohibits legislation which arbitrarily discriminates in favor of a select group." (*Bilyk*, 125 Ill. 2d at 236; see *Chicago National League Ball Club*, 108 Ill. 2d at 367; *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.) Historically, a number of laws that apply to communities with a particular attribute, usually a certain population level, have been challenged as special legislation. Yet these laws have generally been upheld because this court has found that the distinguishing attribute provided sufficient reason to accord those communities a benefit or privilege not granted to communities not possessing that attribute, such as those of a lesser population. (See *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 112 (law setting certain dates for county board primaries and elections, but applying only to counties of fewer than 3 million people with township form of government, valid because it was "a reasonable basis for the classification in view of the objects and purposes to be accomplished").) Furthermore, it has been argued that a special legislation analysis demands more than merely asking the same question as that asked in an equal protection analysis—Is there a rational relationship to a legitimate statutory purpose?—it also demands a determination as to whether a general law is or can be made applicable. (*Illinois Housing Development Authority*, 82 Ill. 2d at 127-28 (Kluczynski, J., dissenting).) In deciding the special legislation issue in the present cause, however, we find that, in determining whether section 4 is valid because rationally related to achievement of a legitimate legislative purpose, the ques-

tion whether a general law could have been made applicable to plaintiffs instead of enacting section 4, which operates on plaintiffs and no other local governments, is answered and therefore does not require separate consideration.

Whether a statute is challenged on equal protection or special legislation grounds, therefore, the standard of review is the same: Are the classifications created by the statute reasonable because these classifications are rationally related to achievement of the statute's legitimate goals in that the particular condition or attribute upon which the classifications are based constitutes a plausible distinction between the classes in view of the statute's legitimate goals? (See *Chicago National League Ball Club*, 108 Ill. 2d at 368; *Illinois Housing Development Authority*, 82 Ill. 2d at 124-25; *Hamilton Corp. v. Alexander* (1972), 53 Ill. 2d 175, 179.) If the classes created by the statute are in fact similar in all respects relevant to the statute's purposes, however, the statute is unconstitutional because either it violates equal protection by denying to one class a benefit accorded those similarly situated, or it violates the bar on special legislation by granting a benefit to one class denied those similarly situated, or it violates both concepts. See *Chicago National League Ball Club*, 108 Ill. 2d at 367-68.

As additional guidance in ruling on the validity of section 4, we note the presumption that legislative enactments are constitutional (*e.g., Bernier v. Burris* (1986), 113 Ill. 2d 219, 227); to the same purpose, statutory classifications created by the legislature "are presumed to be valid" (*Bilyk*, 125 Ill. 2d at 236; see *Illinois Housing Development Authority*, 82 Ill. 2d at 122). As a result, it is for the party challenging a statute's constitutionality—here, plaintiffs—to rebut these presumptions and prove the unconstitutional nature of the statute. *Bilyk*, 125 Ill.

2d at 235; *People v. Walker* (1988), 119 Ill. 2d 465; *Bernier*, 113 Ill. 2d at 227.

Plaintiffs do not dispute the legitimacy of section 4's purpose: to provide for maintenance of the bridges traversing the canal. Rather, plaintiffs argue that they are being denied equal protection because section 4 burdens them with the expense of maintaining certain of these canal bridges when there are similarly situated local governments which are not similarly burdened, and because there is no rational basis for imposing this burden on them and not others. On special legislation grounds, plaintiffs argue that section 4 grants to all citizens of the State except plaintiffs' citizens the special benefit of State financing, and performance, of the maintenance of bridges in State parks, and that existing general laws concerning bridge maintenance could have been applied to these canal bridges.

For plaintiffs to succeed in showing that section 4 is unconstitutional, they have to prove that there are local governments situated similarly to plaintiffs and that these other local governments are treated differently than plaintiffs in respect to their bridge maintenance obligations. In attempting to establish these prerequisites for a declaration of section 4's unconstitutionality on both equal protection and special legislation grounds, plaintiffs repeatedly assert in their written brief that section 4 discriminates against them because it "requir[es] them to maintain bridges within a state park when no other local government is required to maintain any bridges within a state park." Under questioning during oral argument, plaintiffs admitted that this assertion was incorrect, for bridges in many State parks are maintained by local governments.

Consequently, plaintiffs' argument resolves into the contention that operation of section 4 imposed on them alone the responsibility of maintaining bridges located in

a State park, which they had not been responsible for maintaining before the State park was created; in other words, except for plaintiffs, those local governments that are responsible for maintaining bridges in a State park had that responsibility before the State park was created. Thus, in making their equal protection argument, plaintiffs seemingly contend that section 4 created two classifications of similarly situated entities without rational justification: (1) themselves, made responsible for maintaining bridges in a State park although they had not had that bridge maintenance responsibility before the State park was created, and (2) all other local governments in Illinois, which are responsible for maintaining only those bridges located in State parks that they had been responsible for maintaining before the areas were made into State parks.

Plaintiffs' equal protection argument fails because, while plaintiffs have managed to identify a class to which they alone belong, they fail, or refuse, to recognize the rational basis for this classification: Plaintiffs were put into a select class by the United States when it assumed responsibility for maintaining these bridges at the turn of the century, a responsibility which the United States apparently has not assumed anywhere else in Illinois. As a result of the United States' assumption of bridge maintenance duties, plaintiffs for many years were not responsible for maintaining bridges which formed a part of public roads which they were responsible for maintaining; there is no evidence that any other local governments in the State have enjoyed such a situation. Later, when the Federal government withdrew from these bridge maintenance responsibilities, plaintiffs truly were put in a situation unique among all local governments in Illinois. In short, there are no local governments which are situated similarly to plaintiffs on this matter because no other local governments have had the

United States unburden them of their bridge maintenance duties in the past but later withdraw this benefit.

This observation about the unique position in which plaintiffs were placed by the United States, a position which currently threatens them with financial hardship, brings us to a discussion of the common law and statutory duties of road and bridge maintenance applicable to all local governments in Illinois. We agree with defendants that it is relevant that under common law and statutory law the duty to maintain a bridge rests upon the government responsible for maintaining the public roadway of which the bridge is a part, be it a county or a road district (which may comprise one township or a number of municipalities (Ill. Rev. Stat. 1987, ch. 121, pars. 6—101 through 6—105)), and regardless of whether the bridge was built by that local government or by another governmental entity. (See *Metropolitan Sanitary District of Greater Chicago v. Village of Romeoville* (1981), 86 Ill. 2d 213 (common law requires municipality to bear ultimate responsibility for maintaining bridges that are part of public road in municipality's jurisdiction, but municipality may enter into bridge maintenance contract with another governmental entity); *City of Chicago v. Sanitary District* (1949), 404 Ill. 315 (city liable for maintaining bridge built by sanitary district to replace sections of public roads after district constructed drainage channels across roads, for while common law requires that whoever obstructs public road restore road to former condition, common law also requires that city maintain bridge carrying public road over obstruction, for bridge becomes part of public road); Ill. Rev. Stat. 1987, ch. 121, pars. 2—202, 5—401, 5—501 through 5—503, 6—201, 6—201.7, 6—407.) In essence, as long as the public road is restored, the local government retains its road maintenance responsibilities, regardless of the fact

that the road is now carried by a bridge or other structure and not laid directly on the ground.

The ramifications for plaintiffs' bridge maintenance responsibilities of the United States' maintenance of these canal bridges until 1970 is clarified by reviewing the case of *Metropolitan Sanitary District v. Village of Romeoville.* In that case, this court held that while a municipality cannot divest itself of its ultimate responsibility for maintaining bridges that are an integral part of a public road lying within the municipality's jurisdiction, even though the bridges were built by another governmental entity, the municipality may enter into a maintenance contract of indefinite duration with another governmental entity. While the task of maintenance is thereby contracted out to another governmental entity, the ultimate responsibility and liability for maintenance of, as well as jurisdiction and control over, the bridges remains, by virtue of the common law, with the local government within whose jurisdiction lies the portion of the public road containing the bridge. *Metropolitan Sanitary District*, 86 Ill. 2d 213.

In the present case, disregarding the precise point whether it can be said that plaintiffs entered into a "maintenance contract" with the United States, we find that plaintiffs were not divested of their ultimate common law responsibility for maintaining these canal bridges (which form an integral part of public roads that plaintiffs agree they are responsible for maintaining, and which replaced the public roadways existing before the canal was constructed) by the United States' intervention when it built the canal and bridges and then assumed bridge maintenance duties up until 1970. Section 4 served to reimpose on plaintiffs the road maintenance responsibilities which Illinois law imposes on all local governments, but of which plaintiffs were temporarily relieved by a third party, the United States.

Plaintiffs do not dispute that under common and statutory law they, as counties and as townships and towns organized as road districts, have an obligation to maintain and repair public roads within their jurisdictions, including bridges forming a part of those roads. Rather, plaintiffs deny the relevance of their common law and statutory road maintenance duties to the particular issue in the present case. Plaintiffs describe this issue in their brief as "namely, who is to be responsible for bridges in a newly created state park." Now that plaintiffs have necessarily abandoned their original assertion that they are the only local governments responsible for maintaining bridges located in a State park, presumably plaintiffs would frame the issue as whether they should be the only local governments responsible for maintaining State-park bridges for which they were not responsible before creation of the park; and presumably plaintiffs would continue to argue that their common law and statutory duties, as local governments, for bridge maintenance are still irrelevant to the unique burden thrust upon them by section 4. But we think that it is more helpful and that it more clearly reveals the relevance of the common law and statutory duties of road and bridge maintenance to state the issue in the style that plaintiffs originally adopted: Which is to be responsible, the local governments or the State, for bridges in a newly created State park when the United States had previously assumed that responsibility?

Our answer is that the one responsible is the governmental entity, be it the State or the local government, that under the common and statutory law of this State would have been responsible for maintaining those bridges if the United States had not intervened. In regard to the bridges at issue in this case, that entity is each plaintiff that, as a unit of local government, is responsible for maintaining each public road of which a ca-

nal bridge forms a part. In this connection, we observe that in enacting section 4 the General Assembly imposed on the State the obligation to maintain all canal bridges forming part of State highways, thereby reimposing on the State (now that the United States had absolved itself of the obligation of maintaining those bridges as well) the State's common law and statutory duties of maintaining bridges that are part of State highways.

In essence, plaintiffs attempt to persuade us that section 4 deprives plaintiffs of equal protection and constitutes special legislation because section 4 puts them in a unique category of local governments, those who have to maintain bridges in a State park which they did not have to maintain before the State park was created. This perspective ignores the fact that section 4 also serves to draw plaintiffs, with respect to these canal bridges, into another category in which all local governmental entities in the State are included: local governments which are responsible for maintaining bridges that are an integral part of public roads which those entities are responsible for maintaining. If section 4 did not impose this bridge maintenance duty on plaintiffs, plaintiffs would constitute a group that instead of being assessed a special burden would receive a special privilege not granted to any other local governmental entities, for they would not be obligated to maintain bridges that are part of the public roads which they maintain and that pass over public roadways.

In conclusion regarding plaintiffs' equal protection claim, section 4 of the Canal Park Act has reimposed on plaintiffs a responsibility common to all local governments in Illinois—maintaining the public roads which by law are placed under their jurisdiction (Ill. Rev. Stat. 1987, ch. 121, pars. 5—401, 6—201, 6—201.7) and the bridges which are a part of those public roads (see Ill. Rev. Stat. 1987, ch. 121, par. 2—202). Section 4 thus im-

poses on plaintiffs a burden which local governments have long had to bear but which plaintiffs were able to avoid for many years while the United States owned the canal. By rejecting plaintiffs' cramped characterization of the situation (*i.e.*, because no local government has been made responsible for maintaining bridges in a State park for which it was not responsible before creation of the State park and because plaintiffs were not responsible for maintaining the bridges at issue before the Canal Park was created, plaintiffs are being denied equal protection by being compelled to undertake bridge maintenance), and by taking a broader view of the situation which includes the fact that without the United States' voluntarily assuming the obligation of maintaining these bridges plaintiffs would have had to do so, we illuminate two points. First, plaintiffs' unique treatment by section 4 was rationally related to plaintiffs' unique situation. Second, section 4 has actually restored plaintiffs to the situation common to all local governments by removing plaintiffs from their previously unique situation in the State. For while plaintiffs have argued that there are local governments situated similarly to them which, unlike plaintiffs, have no duty to maintain bridges located in State parks for which they were not previously responsible, in reality those other governments are not situated similarly to plaintiffs because those other bridges were not maintained by the United States, as is the case here and because those other governments have not benefitted from years of Federal maintenance. By removing the United States from the equation, the Canal Park Act has left only the local governments and the State and has placed each in its long-standing legal position with regard to maintaining bridges that are a part of either State highways or other public roads. For these reasons, section 4 does not violate the equal protection provision of the Illinois Constitution.

This brings us to plaintiffs' special legislation claim, for plaintiffs argue that section 4 constitutes special legislation because other general laws regarding maintenance of public roads and bridges in general and in State parks could have been applied to the canal bridges at issue in the present case. Plaintiffs argue both that section 4 is special legislation because general laws exist that could have been applied to their canal-bridge predicament, and that section 4 is special legislation because it grants a benefit to all local governments other than plaintiffs. Both arguments fail.

Section 13 of article IV of the Illinois Constitution states that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable"; whether a general law can be applied is for the courts to decide. (Ill. Const. 1970, art. IV, §13; see also *Grace v. Howlett* (1972), 51 Ill. 2d 478, 487.) A special law is one that applies only to a certain segment of the State population, while a local law is one that applies only to a certain geographical area within the State. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10; see also *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38 (defining special and local laws not as those which merely apply to certain segment of population, but as those which also so apply without sound and rational basis).) A general law is a law that by its terms applies to all who are in a like position, who are "similarly situated." (*Bridgewater,* 51 Ill. 2d at 111 ("A law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who occupy a like position to those included").) Thus, a special or local law is permissible and constitutional if a general law that otherwise would apply cannot, in actuality, properly be applied to a situation because certain conditions exist in a particular set of circumstances or in a particular area of the State so that a law tailored to those conditions is

needed in order to achieve a certain legitimate end of the State. See *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399 ("Legislation is not special or local merely because it may operate only in a single place where the condition necessary to its operation exists or because, at the time of its enactment, it can be applied only to one city in the State").

Basically, then, a law is an unconstitutional special law if there is no rational explanation for why that law cannot be applied to all persons or entities in the State, or if there is no rational explanation for why the general law which applies to all other persons and entities in the State should not also be applied to the persons or entity which the law at issue singles out. (See *Bridgewater*, 51 Ill. 2d at 111 ("If there is a reasonable basis for the classification, and it bears a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy, it does not violate the constitutional proscription of special or local laws").) On the other hand, just as under the equal protection analysis, if there is a reasonable basis for differentiating between the classes created by the law at issue, it is not a special or local law despite its application to only a portion of the population, because "the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons." *Bridgewater*, 51 Ill. 2d at 111.

The laws cited by plaintiffs as general laws which are or can be made applicable to this situation, thereby rendering section 4 of the Canal Park Act an unconstitutional special law, do not avail them. Plaintiffs first cite provisions of the Illinois Highway Code, already discussed, as general laws specifying which roads it is the responsibility of the State, counties, or road districts to maintain. Ill. Rev. Stat. 1987, ch. 121, pars. 2—101 *et seq.*, 4—101 *et seq.*, 5—101 *et seq.*, 6—101 *et seq.*

In response to this argument, we first note that, if we held section 4 unconstitutional in light of the Highway Code sections cited, there would be no practical effect on plaintiffs' bridge maintenance responsibilities, for these laws impose on plaintiffs the responsibility of maintaining the bridges in question. In fact, section 4, which states that, other than bridges connecting State highways, each "public road section or bridge, unless designated by the Department of Conservation as an access road or driveway of the Park, shall be maintained by the governmental unit which maintains the road of which such section or bridge is a part," seems merely to have recodified the statutory directives in the Highway Code provisions regarding road and bridge maintenance in general cited by plaintiffs, making it explicit that existence of the Canal Park does not alter those general obligations. We will not hold section 4 to be an unconstitutional special law when it merely clarifies that those who would be responsible for maintaining the bridges pursuant to provisions of the Illinois Highway Code are the same entities which the Canal Park Act makes responsible after title to the canal is transferred to the State from the United States.

Plaintiffs argue that certain other laws expressly make the Department of Conservation and the Department of Transportation responsible for maintaining roads and bridges in State parks (Ill. Rev. Stat. 1987, ch. 105, par. 468(3); ch. 121, par. 4—201.5), and that these are general laws that could have been made applicable to this situation in place of enacting section 4. But these laws deal with the authority of the Department of Conservation to maintain and repair "all needful roads *** bridges *** and any other structures and improvements necessary and appropriate in any state park" (Ill. Rev. Stat. 1987, ch. 105, par. 468(3)), and the authority of the Department of Transportation to maintain and re-

pair, with the consent of the Department of Conservation, any road or bridge "which lies within any State park *** owned and operated by the Department of Conservation" (Ill. Rev. Stat. 1987, ch. 121, par. 4—201.5). Yet these laws do not appear to be applicable to the canal bridges, for defendants have stated that the bridges in question are not within the Canal Park but pass over it, and plaintiffs have not denied this statement. Furthermore, these laws place discretion in the Department of Conservation to decide whether a bridge located in a State park is "needful" and what maintenance is appropriate, and place discretion in the Department of Transportation to request the Department of Conservation's consent to maintain bridges in a State park, for no duty is imposed on the Department of Transportation to do so. Because plaintiffs have not shown that these canal bridges are somehow "needful" to the Canal Park, these laws do not appear to have general applicability to the canal bridges, so as arguably to render section 4 of the Canal Park Act unconstitutional special legislation.

There is another issue relating to whether a general law was or could have been made applicable to these canal bridges which concerns us, but which plaintiffs did not raise. That issue is section 4's restrictive wording, limiting section 4's applicability to only those bridges that pass over the Illinois and Mississippi Canal. This court has explained that "a law may be general notwithstanding that it may operate only in a single place where conditions necessary to its operation exist," and that "[a] law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who occupy a like position to those included." (*People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 577-78.) This court has also drawn the related conclusion that "[l]egislation is not special or local merely because it

may operate only in a single place where the condition necessary to its operation exists or because, at the time of its enactment, it can be applied only to one city in the State." *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.

This court's previous declarations show that section 4 is not a general law because its terms limit its applicability to the Illinois and Mississippi Canal and the bridges passing over that canal. As written, section 4 could never be applied to any other geographical location in the State where a situation might conceivably arise that resembled the controversy here. (*Cf. Alexander v. City of Chicago* (1958), 14 Ill. 2d 261 (law which applied only to municipalities and park districts with coextensive geographical areas and populations in excess of 500,000 was general law because, though City of Chicago and its park district were only entities to which law then applied, by its terms law could apply to other cities and park districts).) Clearly, the General Assembly could have passed a law phrased less specifically which would have been applicable to any future situations similar to the situation surrounding the canal, even though currently no such similar situation exists. Nonetheless, while section 4 is a special and local law, not a general law, given its limited applicability to the Illinois and Mississippi Canal and its bridges, we will not find it to be unconstitutional unless it has the unconstitutional effect of according a special privilege to some local governments which it denies to plaintiffs.

Plaintiffs argue that section 4 constitutes special legislation because it divides the State's local governments into two classes: (1) those responsible for maintaining bridges located in State parks, of which class plaintiffs are the sole members according to their brief, and (2) those that do not have such a responsibility and so receive the special benefit of having the State pay for and conduct this maintenance. However, we do not find that

section 4 accords any special benefit to any local governments; instead, it merely imposes a burden on plaintiffs; therefore, plaintiffs' special legislation argument fails. Furthermore, as we have already explained, plaintiffs are not being treated differently as regards their bridge maintenance responsibilities than any other local governments in the State. Lastly, addressing our concerns regarding the restrictive language of section 4, because there are no other currently existing situations in the State that are similar to the situation involving the canal, we cannot find that section 4 is unconstitutional special legislation despite its restrictively specific language. We cannot say that the General Assembly acted unconstitutionally when it included as part of the Canal Park Act section 4's specific provisions regarding these bridges, because the practical effect is that plaintiffs have not been given any special burden without a rational basis, and no other local government has received any special privilege. The unique circumstances surrounding construction and maintenance of these canal bridges by the United States warranted the General Assembly's enactment of section 4 of the Canal Park Act to provide for maintenance of these bridges after the State accepted title to the canal, and in doing so to conform these unique circumstances to the general obligations of local governments to maintain public roads and bridges. However, if a similar situation were to arise and that were not treated in a manner similar to that in which the canal, its bridges, and the communities where those bridges exist have been treated, section 4 would violate both the equal protection and special legislation provisions of the Illinois Constitution.

For the reasons stated in this opinion, we reverse the judgment of the circuit court.

*Judgment reversed.*