RONALD C. RODGERS *et al.*, Plaintiffs-Appellants, v. DOUGLAS WHITLEY, as Director of the Illinois Department of Revenue, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—93—4338

Opinion filed July 8, 1996.

WOLFSON, J., specially concurring.

Rudnick & Wolfe, of Chicago (Seymour Simon, William J. Campbell, Jr., and Richard S. Huszagh, of counsel), for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from the trial court's dismissal of plaintiffs' amended complaint challenging the constitutionality of certain provisions of the Property Tax Extension Limitation Law (the Act) (35 ILCS Ann. 200/18—185 *et seq.* (Smith-Hurd Supp. 1996)). Plaintiffs' appeal raises the following issues: (1) whether plaintiffs have standing to challenge the constitutionality of the Act; (2) whether an adequate remedy at law exists so as to preclude injunctive relief; and (3) whether plaintiffs' amended complaint states valid claims that the Act violates the special legislation clause of the Illinois Constitution, the uniformity of taxation clause of the Illinois Constitution, and the equal protection and due process clauses of the Illinois and United States Constitutions.

The original complaint was filed on January 29, 1992, by three residents of Cook County against Illinois Governor James Edgar, Illinois Department of Revenue Director Douglas L. Whitley, and various Cook County officials. The complaint sought a declaration that the Act was unconstitutional and a permanent injunction enjoining defendants from enforcing it. On August 18, 1992, the trial court dismissed the complaint for failure to join necessary parties, but plaintiffs were granted leave to file an amended complaint.

On October 16, 1992, plaintiffs filed an amended complaint. Plaintiffs in the amended complaint are 17 property owners and residents in the Illinois Counties of Cook, Du Page, Kane, Lake, McHenry, and Will. Eleven of the plaintiffs are parents of children

who attend school in school districts within the named counties. Some of the plaintiffs, including at least one from each county, are also employees of taxing bodies located in these counties. Defendants are Edgar, Whitley, and the clerks and treasurers of the six counties.

The amended complaint states that property taxes are imposed on behalf of and collected for local taxing districts, such as school districts, park districts, library districts, and fire protection districts. The Property Tax Extension Limitation Law was passed in 1991, with the stated intended purpose of redressing what the General Assembly found to be rapidly escalating property taxes and unpredictable fluctuations in tax extensions in Cook, Du Page, Kane, Lake, McHenry, and Will Counties (the affected counties).

The amended complaint states that the Act limits property tax extension increases in non-home-rule taxing districts in Du Page, Kane, Lake, McHenry, and Will Counties (the Collar Counties) to "the lesser of 5% or the percentage increase in the Consumer Price Index" during the year preceding the levy year. If a district is located in more than one county, this limitation only applies if the majority of the 1990 assessed value is located in one or more of the Collar Counties. In 1995, the Illinois legislature amended the Act so as to subject tax districts in Cook County to the same limitation as districts in the Collar Counties. The Act further provides that tax extensions for districts in Cook County are computed based upon the previous year's property values, which, according to the amended complaint, effectively reduces the tax rate for districts whose levies are near the statutory maximum. The Act provides for no property tax limitation for districts in any of the unaffected counties.

The amended complaint alleges:

"The [Act] has caused and will cause reduced property tax revenues and funding for desirable services furnished by taxing bodies located in Cook County and the collar Counties, including library districts and school districts where Plaintiffs reside, have children attending schools, and teach school. The [Act] has also caused and will cause reduced State aid to many such school districts and library districts, including all school districts where Plaintiffs' children attend school and where Plaintiffs teach school except [one]."

Count I of the amended complaint alleges that the Act violates article IV, section 13, of the Illinois Constitution (the special legislation clause), which provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

Count I alleges that the Act's use of county borders to classify the tax districts subject to the limitations described above is arbitrary and does not correlate with the Act's stated legislative purpose of providing tax relief to overburdened districts. Count I further states that many tax districts in the affected counties have experienced substantially lower levels of tax extension increases than many tax districts in the unaffected counties. For example, more than 60 of the tax districts that experienced over 50% growth in major tax extensions between 1985 and 1990 are located in unaffected counties, and 35% of the school districts that experienced more than 25% growth in such tax extensions during this period are located in unaffected counties. Furthermore, many school districts in the affected counties have experienced less than 25% growth in tax extensions over this period.

Count II of the amended complaint alleges that the Act violates article IX, section 4(a), of the Illinois Constitution (the uniformity of taxation clause), which provides that "taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." Ill. Const. 1970, art. IX, § 4(a). Plaintiffs claim the Act violates this clause by directly limiting property tax extension increases in the affected counties and by failing to provide any limitation in the unaffected counties.

Count III of the amended complaint alleges that the Act violates the due process and equal protection clauses in article I, section 2, of the Illinois Constitution and the fourteenth amendment of the United States Constitution, which guarantee that no person shall be deprived of life, liberty or property without due process of law or be denied equal protection of the laws. Count III alleges that the classification of tax districts by county is arbitrary, and it repeats the statistical allegations made in count I comparing tax extension increases in various tax districts in the affected counties with those in certain districts in the unaffected counties.

All three counts state that an actual controversy regarding the constitutionality of the Act exists between plaintiffs and defendants, and implementation and enforcement of the Act will cause irreparable harm to plaintiffs, for which they have no adequate remedy at law. Therefore, each count seeks a declaratory judgment that the Act is unconstitutional and a permanent injunction prohibiting its implementation and enforcement.

Defendants moved to dismiss plaintiffs' amended complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) for lack of standing, existence of an adequate remedy at law, and failure to state a claim for which relief could be granted. On

November 10, 1993, the trial court granted defendants' motion on all of the grounds asserted. On December 7, 1993, plaintiffs filed their notice of appeal.

In considering and reviewing a section 2—615 motion to dismiss, all well-pleaded facts must be taken as true and considered in the light most favorable to the plaintiffs. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46, 566 N.E.2d 1365, 1366 (1991).

I. STANDING

The trial court initially found that plaintiffs lack standing to challenge the constitutionality of the Act. Defendants concede that the question of standing is a factual matter that must be resolved by resort to affirmative matters and should not be determined based on the pleadings in a section 2—615 motion to dismiss. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575 (1988). Nonetheless, a discussion of plaintiffs' standing follows.

The trial court found that plaintiffs lack standing for two reasons. First, the court held that as residents of counties where the Act provides limits on property tax increases, plaintiffs are beneficiaries of the statute. Therefore, the court found that they are not harmed by the Act, and they lack standing to challenge it.

■ It is well established that in order to have standing to challenge a statute, a plaintiff must be within the class of people as to whom the statute is allegedly unconstitutional. *Schreiber v. County Board of School Trustees*, 31 Ill. 2d 121, 125, 198 N.E.2d 848, 851 (1964). The trial court stated that plaintiffs claim the Act is unconstitutional because it "favors taxpayers in Cook and the collar counties over taxpayers in the downstate counties." However, this was a mischaracterization of plaintiffs' claim. Plaintiffs' complaint clearly asserts that the Act is unconstitutional as to them, because it has caused and will continue to cause a deterioration in services provided by taxing bodies that rely on property tax revenue for funding. Therefore, the trial court erred in holding that "[p]laintiffs are not within the class as to whom the [Act] is allegedly unconstitutional."

■ Second, the trial court held that plaintiffs lack standing because they have failed to allege an injury to a legally protected interest. Specifically, the court found that plaintiffs had not alleged that any state law or rule entitles them to a certain standard or level of public benefits. However, such an allegation is unnecessary. Standing merely requires that there be some injury to a "legally cognizable interest" of the plaintiff. *Greer*, 122 Ill. 2d at 492, 524 N.E.2d at 574. "More precisely, the claimed injury, whether 'actual or threatened' [citation], must be: (1) 'distinct and palpable' [citation];

(2) 'fairly traceable' to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]." *Greer*, 122 Ill. 2d at 492-93, 524 N.E.2d at 575. Without finding that some state law guarantees a certain value for real property, the Illinois Supreme Court in *Greer* stated, "[t]here is no question that a diminution in the value of property is a legally cognizable interest." *Greer*, 122 Ill. 2d at 493, 524 N.E.2d at 575.

■ Likewise, in this case, even though there is no guarantee under state law to a certain level of public benefits, recipients of those benefits still have a legally cognizable interest in them. Plaintiffs claim they are injured by the Act because it has led to insufficient funding for taxing bodies, causing a reduction in public services. This alleged injury is distinct and palpable as to residents of the affected counties, and it is clearly traceable to defendants' implementation and enforcement of the Act. Furthermore, if plaintiffs are granted the declaration and injunction they request, the limitations in the generation of revenue which plaintiffs claim caused their injury would no longer exist. Therefore, plaintiffs have alleged an injury to a legally cognizable interest, and they have standing to challenge the constitutionality of the Act.

The trial court based its decision on various cases addressing property interests and constitutional rights. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972); *McInnis v. Shapiro*, 293 F. Supp. 327, 332 (N.D. Ill. 1968), *aff'd*, 394 U.S. 322, 22 L. Ed. 2d 308, 89 S. Ct. 1197 (1969); *Jordan v. Metropolitan Sanitary District of Greater Chicago*, 15 Ill. 2d 369, 382-83, 155 N.E.2d 287, 305 (1958). However, none of these cases involve questions of standing or legally cognizable interests, and, therefore, they are inapplicable here.

The trial court also cited *McDonald v. McGowan*, 163 Ill. App. 3d 697, 516 N.E.2d 934 (1987), for the proposition that "[p]laintiffs have no standing to assert the rights of their children to a public education." Initially, we note that plaintiffs' complaint does not assert a constitutional right to a public education; rather, it asserts a constitutional right to be free of arbitrary classifications that treat plaintiffs differently from similarly situated individuals residing downstate. Secondly, *McDonald* does not involve standing or education. The petitioner in that case alleged that he was the father of a minor with whom he sought visitation rights. *McDonald*, 163 Ill. App. 3d at 698, 516 N.E.2d at 934. The court held that the minor was entitled to have a guardian appointed to represent her, but the petitioner should not be the appointee because he would have a potential conflict of interests. *McDonald*, 163 Ill. App. 3d at 700, 516

N.E.2d at 935. The case has nothing to do with standing, and, therefore, the trial court erred in relying on it.

As residents of affected taxing districts and recipients of property tax supported services, plaintiffs have a sufficient personal stake in the funding for these services to establish standing.

## II. ADEQUATE REMEDY AT LAW

■ Plaintiffs claim that the trial court erred in finding that they have no right to a declaratory judgment or injunctive relief because they have an adequate remedy at law. The trial court found that the "specific objection procedure" and the "referendum procedures" are remedies available to plaintiffs that bar their claim for injunctive relief.

The tax objection procedure allows an individual to pay his taxes under protest and then file an objection with the collector's office seeking a refund. 35 ILCS 205/194 (West 1992). Clearly, a refund procedure available for individual property owners who feel that they have been overtaxed does not provide a remedy to these plaintiffs, who feel that the Act deprives public services of adequate funding.

The referendum procedure is encompassed in the Act and provides that an extension limitation may be increased if the district holds a referendum in which a majority of the voters voting on the issue approve a higher limitation. 35 ILCS 245/1—15 (West 1992). The trial court's holding that this procedure provides an adequate remedy at law is erroneous. People who believe that they are harmed by an unconstitutional statute may always seek legislative redress, but this process does not provide an adequate remedy at law so as to preclude a constitutional challenge. Therefore, the trial court erred in ruling that plaintiffs are not entitled to a declaratory judgment and injunctive relief because they have an adequate remedy at law.

## III. CLAIMS FOR RELIEF

The trial court held that plaintiffs' amended complaint failed to state a claim upon which relief could be granted. Count I claims the Act violates the special legislation clause; count II claims the Act violates the uniformity of taxation clause; and count III claims the Act violates the due process and equal protection clauses.

■ Plaintiffs first contend that the trial court erred in finding that their amended complaint failed to state a claim under the special legislation clause. Article IV, section 13, of the Illinois Constitution states:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general

law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

A "special" or "local" law is one that confers a particular right or imposes a particular burden on only a portion of the people in Illinois. *Bridgewater v. Hotz*, 51 Ill. 2d 103, 109-10, 281 N.E.2d 317, 321 (1972). Conversely, a "general" law is one that operates the same way upon all persons in like situations. *Bridgewater*, 51 Ill. 2d at 109, 281 N.E.2d at 321. Therefore, the purpose of the special legislation clause is to prohibit similarly situated people from being treated differently, if it is reasonably possible for them to be treated the same. *In re Belmont Fire Protection District*, 111 Ill. 2d 373, 379-80, 489 N.E.2d 1385, 1388 (1986); *Bridgewater*, 51 Ill. 2d at 111-12, 281 N.E.2d at 322.

Because the Act does not involve a fundamental right or a suspect classification, the appropriate standard of review is the rational basis test. *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 123, 658 N.E.2d 365, 367 (1995). Under the rational basis test, a legislative classification based on population or territorial differences will survive a special legislation challenge only where there exists a "rational difference of situation or condition" between those people or objects included in the classification and those excluded from it. *Vernon Hills*, 168 Ill. 2d at 123, 658 N.E.2d at 368. Therefore, the classification must be rationally related to a legitimate purpose of the legislation. *Vernon Hills*, 168 Ill. 2d at 123, 658 N.E.2d at 368.

The trial court found that count I failed to allege facts that, if proved, would support a finding that the Act violates the special legislation clause. However, a complaint must only contain "a plain and concise statement" of the plaintiff's cause of action. 735 ILCS 5/2—603 (West 1994). It is unnecessary for a complaint to set forth the evidence that the plaintiff intends to introduce at trial. *Ingram v. Little Company of Mary Hospital*, 108 Ill. App. 3d 456, 459, 438 N.E.2d 1194, 1196 (1982). Rather, the complaint need only contain "such information as reasonably informs the opposite party of the nature of the claim." 735 ILCS 5/2—612(b) (West 1994).

■ In this case, count I of the amended complaint clearly informs defendants of the nature of plaintiffs' claim, and it even provides an example of the sort of evidence plaintiffs intend to present to support their claim. Plaintiffs assert that the classification by county is arbitrary and not rationally related to the purpose of reducing the excessive tax burdens experienced by residents of some districts. Specifically, count I states that many tax districts in the affected counties "have received substantially lower levels of tax extension increases than many tax districts in the [unaffected] Counties." It

then alleges several statistical facts tending to support this allegation. The nature of plaintiffs' claim in count I is that classification by *county* population to determine which *districts* are subject to property tax limitations is arbitrary and violates the special legislation clause because many districts in the unaffected counties have experienced greater tax extension increases than some districts in the affected counties. We believe that count I "reasonably informs [defendants] of the nature of the claim" (735 ILCS 5/2—612(b) (West 1994)), and, therefore, it should not have been dismissed.

Defendants contend that this court should affirm the dismissal under two recent decisions upholding population-based classifications over special legislation challenges. In *Northern Illinois Home Builders Ass'n, Inc. v. County of Du Page*, 165 Ill. 2d 25, 649 N.E.2d 384 (1995), the Illinois Supreme Court upheld a statute authorizing only counties with populations over 400,000 to impose "transportation impact fees" on developers to pay for road improvements and prevent traffic congestion caused by new development. *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 39, 649 N.E.2d at 392. The court found that a rational basis for the population-based classification exists because there is a direct correlation between traffic congestion and population. *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 39, 649 N.E.2d at 392. Similarly, in *Village of Schaumburg v. Doyle*, 277 Ill. App. 3d 832, 661 N.E.2d 496 (1996), this court upheld a statute that prohibited pesticide regulation by any political subdivision except counties and municipalities with a population over 2 million (*i.e.*, Chicago and Cook County). *Village of Schaumburg*, 277 Ill. App. 3d at 842, 661 N.E.2d at 504. The court found that the purpose of the statute was to prevent duplicative state and local efforts, and that it was reasonable for the legislature to conclude that only Chicago and Cook County are large enough to have "the resources, expertise, and will to deal with the regulation of pesticides." *Village of Schaumburg*, 277 Ill. App. 3d at 842, 661 N.E.2d at 504.

In both these cases, concerns directly related to population were addressed with classifications based on population. Here, on the other hand, plaintiffs have alleged that the problem the Act seeks to correct, excessive property tax increases, is not related to population. In support of their contention, plaintiffs allege that numerous districts in unaffected counties have experienced tax extension increases equal to or more than many districts in the affected counties. Plaintiffs' complaint also cites some specific examples of these disparities.

We believe that the allegations in plaintiffs' amended complaint sufficiently state a claim that the Act violates the special legislation clause because classifications based on county population are not

rationally related to the stated purpose of providing property tax relief for people residing in districts which have experienced excessive tax extension increases. Therefore, the trial court erred in dismissing count I.

■ Next, plaintiffs contend that the trial court erred in finding that count II of the amended complaint failed to state a claim under the uniformity of taxation clause. Specifically, plaintiffs contend that the trial court erred in finding that the clause only requires equal methods of assessment, not equal tax rates. The Illinois Supreme Court has described the requirements of the uniformity of taxation clause as follows:

> "The principle of uniformity of taxation requires equality in the burden of taxation. *** [A]n equal tax burden cannot exist without uniformity in both the basis of assessment and in the rate of taxation. [Citation.] The uniformity requirement prohibits taxing officials from valuating one kind of property *within a taxing district* at a certain proportion of its true value while valuating the same kind of property *in the same district* at a substantially lesser or greater proportion of its true value." (Emphasis added.) *Kankakee County Board of Review v. Property Tax Appeal Board*, 131 Ill. 2d 1, 20, 544 N.E.2d 762, 771 (1989).

Therefore, plaintiffs are correct that the uniformity of taxation clause involves both the method of assessment and the rate of taxation. However, plaintiffs overlook the clear holding of the supreme court that the clause merely requires equality within each individual tax district. *Kankakee County Board of Review*, 131 Ill. 2d at 20, 544 N.E.2d at 771. Thus, a claim that a statute is unconstitutional under the uniformity of taxation clause must allege a disparate valuation or rate of taxation for similar properties within individual taxing districts. Plaintiffs' amended complaint contains no such allegation, and, therefore, the trial court properly dismissed count II.

■ Finally, plaintiffs contend that the trial court erred in dismissing count III of their amended complaint for failure to state a claim under the due process and equal protection clauses of the Illinois and United States Constitutions. In *County of Bureau v. Thompson*, 139 Ill. 2d 323, 564 N.E.2d 1170 (1990), the Illinois Supreme Court held that a constitutional challenge on equal protection grounds requires the same analysis as a challenge on special legislation grounds. *County of Bureau*, 139 Ill. 2d at 337, 564 N.E.2d at 1177. In both instances, the standard of review is whether the classifications created by the statute are rationally related to achievement of the statute's legitimate goals. *County of Bureau*, 139 Ill. 2d at 337, 564 N.E.2d at 1177. As explained above with respect to plaintiffs' claim under the

special legislation clause, the allegations in plaintiffs' amended complaint that the Act's classifications by county are not rationally related to its purpose of relieving the tax burden in districts that have experienced excessive growth in property tax extensions are sufficient to survive a section 2—615 motion to dismiss. For the same reasons, the trial court erred in dismissing count III.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed except insofar as it determined that plaintiffs failed to state a claim under the uniformity of taxation clause. The case is remanded to the trial court for proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

BRADEN, J., concurs.

JUSTICE WOLFSON, specially concurring:

Standing requires some injury in fact to a legally cognizable interest. *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 254, 483 N.E.2d 1263 (1985). While the claimed injury may be actual or threatened, it must be "distinct and palpable." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493, 524 N.E.2d 561 (1988).

As I understand it, the plaintiffs are complaining that their property taxes are made too low by the tax cap act. The reduced tax revenues, they say, will reduce funding for necessary and desirable services furnished by taxing bodies in Cook County and the Collar Counties. They complain about reduced state aid to school and library districts, but allege no facts to support the broad allegations.

I have difficulty seeing how the plaintiffs have alleged an injury in fact to a legally cognizable interest. This is far from the diminution in value of the plaintiffs' homes in *Greer*. It sounds more like a generalized grievance common to all members of the public.

I concur in the court's opinion because I believe the issue of standing ought to be resolved by summary judgment motion, after appropriate discovery. I do not read the court's opinion as having foreclosed the issue.