HINSDALE GOLF CLUB, Appellant, v. ANTHONY W. KOCHANSKI *et al.*, Appellees.—ANTHONY W. KOCHANSKI, Appellant, v. HINSDALE GOLF CLUB *et al.*, Appellees.

Second District   Nos. 2—89—1087, 2—89—1097 cons.

Opinion filed May 3, 1990.—Rehearing denied June 19, 1990.

Joseph S. Wright, Jr., of Martin, Craig, Chester & Sonnenschein, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and Dorothy M. Gunn, of Pollution Control Board, of Chicago (William D. Seith, Assistant Attorney General, of Chicago, of counsel), for respondent Pollution Control Board.

JUSTICE INGLIS delivered the opinion of the court:

Hinsdale Golf Club (Golf Club) and Anthony W. Kochanski have filed separate appeals from a final order entered by the Pollution Control Board (Board). The Golf Club appeals from the Board's finding that its complained-of activity is subject to the Board's noise regulations (No. 2—89—1087). Kochanski, who appeared *pro se* before the Board and this court, appeals from the Board's finding on the merits of his noise complaint filed against the Golf Club (No. 2—89—1097). For purposes of review, this court has consolidated the two appeals.

On January 15, 1988, Kochanski filed a formal complaint with the Board against the Golf Club alleging that the skeet-shooting activities conducted on the facility emanates impulsive noise onto neighboring residential properties in violation of sections 900.102 and 901.104 of title 35 of the Administrative Code (Code) (35 Ill. Adm. Code §900.102 (1985); 35 Ill. Adm. Code §900.104 (Supp. 1988)). The Golf Club has conducted skeet shooting on its property since 1943. The activity is licensed by the Village of Clarendon Hills yearly for four-month terms commencing the beginning of November and running to the end of February. The Golf Club's current schedule, revised about five or six years ago, restricts the shooting to Saturdays and Sundays between the hours of 11 a.m. and 3 p.m. The schedule includes organized events among the Club's members as well as competition with other skeet clubs. About 20 to 50 shooters participate in the club's skeet-shooting activities, which is restricted to club members. The Golf Club is a private club whose members are drawn from that portion of the general public who chose to apply for membership and pay the initiation fee.

The shooting occurs behind the clubhouse in the approximate center of the Golf Club grounds. Although the general area is flat, the grounds of the club roll, and the shooting occurs in a depression be-

tween two greens. Abutting the grounds on the northeast and east of the club is residential property, including property owned by Kochanski. Between the skeet-shooting field and the residential area is about 400 yards of Golf Club grounds, along which is a 10-foot to 12-foot-high berm, then two or three extensive rows of deciduous trees. A short distance to the east of the residential area is Illinois Route 83, a major highway carrying significant truck traffic. Thus, Kochanski's property is situated between the Golf Club and the highway.

In an order dated January 21, 1988, the Board noted that section 25 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1025) places certain restrictions on the Board's ability to hear noise violation proceedings involving certain sporting activities. The pertinent language of section 25 states that "[n]o Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to any organized amateur or professional sporting activity." (Ill. Rev. Stat. 1987, ch. 111½, par. 1025.) To determine better whether it had authority to hear the complaint, the Board required the parties to file written documents discussing whether the complained-of activity is an "organized amateur or professional sporting activity." The statutory definition of "organized amateur or professional sporting activity" is contained in section 3.25 of the Act and provides:

> " 'Organized amateur or professional sporting activity' means an activity or event carried out at a facility by persons who engaged in that activity as a business or for education, charity or entertainment for the general public, including all necessary actions and activities associated with such an activity. This definition includes, but is not limited to, skeet, trap or shooting sports clubs in existence prior to January 1, 1975, organized motor sports, and sporting events organized or controlled by school districts, units of local government, state agencies, colleges, universities or professional sports clubs offering exhibitions to the public." Ill. Rev. Stat. 1987, ch. 111½, par. 1003.25.

In response, the Golf Club filed a motion to dismiss on February 1, 1988, alleging that the skeet-shooting activity is an organized sporting activity within the meaning of the statute and, as such, is not subject to the Board's regulations. The Club argues that it is not necessary that the sporting activity be open to the general public, as the statutory definition specifically includes "skeet, trap or shooting sports clubs" (Ill. Rev. Stat. 1987, ch. 111½, par. 1003.25) and by its very definition "club" excludes the general public.

The Board disagreed, finding that the skeet-shooting activity in question does not fall within the statutory definition of organized amateur or professional sporting activity. In its order dated February 25, 1988, the Board stated that "[a]lthough the public may be able to apply for membership to the club, the shooting activities are carried out privately among members of the Hinsdale Golf Club." The Board concluded that the shooting activity was, therefore, not "carried out *** for the general public" and that the Golf Club was not a "skeet, trap, or shooting sports club" within the statutory exception. Consequently, a majority of the Board denied the Golf Club's motion to dismiss.

After considering the merits of Kochanski's complaint, a majority of the Board ruled in favor of the Golf Club, finding no violation under either the numerical sound emissions standard (35 Ill. Adm. Code §901.104 (Supp. 1988)) or the narrative sound emissions standard (35 Ill. Adm. Code §900.102 (1985)). One Board member concurred with the majority's opinion, agreeing that the matter should be dismissed but arguing that the complained-of activity was exempt from Board regulation. Two members dissented, arguing that the Board erred in finding that the complained-of activity did not violate noise regulations. These timely appeals ensued.

We first consider the contention raised by the Golf Club as its resolution may be dispositive of both appeals. The Golf Club contends that the Board erred in finding that the skeet-shooting activity did not fall within the statutorily exempt category of organized amateur sporting activity. The Board responds by maintaining that, in order to be exempt from Board regulation, the skeet club must benefit the general public. The Board contends that, while the definition of "club" does connote exclusion of the general public, under the statute a club can nonetheless fall within the exception if it offers a direct benefit for the general public.

■ The construction of a statute is a question of law. (*Krall v. Secretary of State* (1988), 168 Ill. App. 3d 478, 483.) A court's function in interpreting statutory provisions is to ascertain and give effect to the legislative intent underlying the statute; thus, the court must look at the statute as a whole, taking into consideration its nature, its purposes and the evil the statute was intended to remedy. (*Rodgers v. Department of Employment Security* (1989), 186 Ill. App. 3d 194, 198.) Each word, clause, or sentence of a statute must not be rendered superfluous but must, if possible, be given some reasonable meaning. (*Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n* (1989), 181 Ill. App. 3d 616, 620.) When the statutory language is clear and unambiguous, this court's only function is to enforce the law

as enacted by the legislature. *Eckman v. Board of Trustees for the Police Pension Fund* (1986), 143 Ill. App. 3d 757, 762.

■■ While an agency's construction of a statute will normally be given substantial weight and deference, it is not binding on a court where it is clearly erroneous, arbitrary, or unreasonable. (*Krall*, 168 Ill. App. 3d at 483-84.) Here, the Board held that, because the shooting activities are carried out privately among the Golf Club members, the statutory exception did not apply. The Board went on to state that "[n]or does *** the activity fall[ ] within the 'skeet, trap, or shooting sports clubs in existence prior to January 1, 1975' exception." In its opinion, however, the Board did not explain the latter part of its holding, and we find that the explanation now given is unreasonable.

Prior to its 1981 amendment, section 25 provided:

"[N]o Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to skeet, trap or shooting sports clubs chartered and operational prior to January 1, 1975, which are situated in the same location in which they were situated prior to January 1, 1975 or to any sanctioned motor racing event at a motor racing facility in existence prior to January 1, 1975, or any other sporting event sanctioned by the American Athletic Union, the National Collegiate Athletic Association, or the Illinois High School Association." (Ill. Rev. Stat. 1979, ch. 111½, par. 1025.)

Public Act 82—654 amended section 25 to provide simply that "no Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to *any* organized amateur or professional sporting activity." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111½, par. 1025.) "Organized amateur or professional sporting activity" was then defined as:

"an activity or event carried out at a facility by persons who engaged in that activity as a business or for education, charity or entertainment for the general public, including all necessary actions and activities associated with such an activity. This definition includes, but is not limited to, skeet, trap or shooting sports clubs in existence prior to January 1, 1975, organized motor sports, and sporting events organized or controlled by school districts, units of local government, state agencies, colleges, universities or professional sports clubs offering exhibitions to the public." Ill. Rev. Stat. 1981, ch. 111½, par. 1003(v).

■■ From our reading of the history of the statute and its present

language, it appears that Public Act 82—654 enlarged the types of activities excluded from the Board's jurisdiction, not restricted them. Skeet-shooting clubs, regardless of their public involvement, were originally excluded, and we do not read Public Act 82—654 as limiting that exclusion.

■ It is well established that in construing a statute, the more specific terms prevail over the more general. (*City of Lake Forest v. Pollution Control Board* (1986), 146 Ill. App. 3d 848, 855.) Thus, the specific examples of the excluded activities provided in the second sentence of section 3.25 prevail over the more general definition provided in the first sentence.

■ Further, the Board's argument that the phrase "offering exhibitions to the public" qualifies the listed examples in section 3.25 is without merit. We read the same phrase as only qualifying certain organized sporting events. That is, "organized amateur or professional sporting activity" includes, but is not limited to: (1) skeet, trap, or shooting sports clubs; (2) organized motor sports; and (2) sporting events organized by various listed entities including professional sports clubs which offer exhibitions to the public. Because the skeet-shooting activity at issue here clearly falls within the first-listed exception, it is thereby excluded from the regulatory purview of the Board. Consequently, the Board had no authority to hear the matter.

Given our finding that the Board's regulations do not apply to the activity at issue, it is unnecessary for us to consider the correctness of the Board's ruling finding that no violation existed.

For the reasons stated above, we reverse the Board's decision and dismiss the complaint.

Reversed.

WOODWARD and McLAREN, JJ., concur.