ANNE SHEPARD *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Second District No. 2—94—0864

Opinion filed May 4, 1995.—Rehearing denied July 11, 1995.

766

Anne Shepard, James Verhein, and Jerold Leckman, all of Grayslake, petitioners *pro se.*

James E. Ryan, Attorney General, Dorothy M. Gunn, of Pollution Control Board, and Kathleen M. Crowley, all of Chicago (Marie E. Tipsord, Special Assistant Attorney General, of counsel), for respondent Pollution Control Board.

David C. Layden, Patrick G. Moran, and Jeffrey C. Fort, all of Sonnenschein, Nath & Rosenthal, of Chicago, for respondent Northbrook Sports Club.

Andrew C. Lynch and Robert J. Long, both of Lynch, Lumber & Wysocki, of Antioch, for respondent Village of Hainesville.

JUSTICE RATHJE delivered the opinion of the court:

Petitioners, Anne Shepard, James Verhein, and Jerold Leckman, take an appeal from a final order entered by the Pollution Control Board (Board) dismissing their complaint against the Northbrook Sports Club (Club) and the Village of Hainesville (Village).

The complaint alleged that in 1987 the Village and the Club entered into an agreement whereby the Village annexed the Club's property. The Club constructed a new skeet and trap range, consisting of a clubhouse and several shooting stations on its property. Later, the Club expanded its shooting activities to include sporting clays. The complaint further alleged that the shooting activities took place primarily on Thursdays from 5 p.m. until 10 p.m. and on Saturday and Sundays, from 9 or 10 a.m. until 5 p.m. Sometimes the shooting activities took place on Wednesdays, Fridays, and holidays.

The complaint alleged that the gunfire from the shooting activities causes noise pollution, interferes with the enjoyment of the petitioners' homes, interferes with their recreational activities, and depresses their property values. The complaint further alleged that such sound emissions violated sections 23 and 24 of the Environmental Protection Act (Act) (415 ILCS 5/23, 24 (West 1992)) and sections 900.102, 901.102(a) and 901.104 of title 35 of the Illinois Administrative Code (Code) (35 Ill. Adm. Code §§ 900.102, 901.102(a), 901.104 (1991)). The complaint sought a cease and desist order for all sound emissions in violation of the Act, penalties for said violations, and that the Board adopt more specific criteria to eliminate such noise pollution.

The Club filed a motion to dismiss the complaint as frivolous, arguing that as a "skeet, trap and sports club," it was exempt from the Board's regulatory power. The Village also filed a motion to dismiss on the basis that the Village had no ownership interest in the Club property. The Board dismissed the petitioners' motion for discovery on the basis that it was not relevant to the issues before the Board.

On May 5, 1994, the Board dismissed the complaint. The Board found that the Club was "an organized amateur or professional sporting activity" and was therefore exempt from the Board's noise standards. The Board further found that petitioners' reliance on section 24 of Act was misplaced as section 24 did not set forth a violation of the Act. On June 23, 1994, the Board denied petitioners' motion for reconsideration. This appeal followed.

On appeal, petitioners raise the following issues: (1) whether or not sections 3.25 and 25 of the Act prohibit the Board from hearing noise pollution complaints that are a common-law nuisance; (2) whether the Board properly construed sections 3.25 and 25 of the Act; (3) whether the Board erred in placing the burden of proof for the exemption under sections 3.25 and 25 of the Act upon the petitioners; and (4) whether the exemption under sections 3.25 and 25 is constitutional.

■ Petitioners contend, first, that section 24 of the Act provides a general statutory cause of action that is enforceable before the Board. Section 24 provides as follows:

"No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business activity, *so as to violate any regulation or standard adopted by the Board under this Act.*" (Emphasis added.) 415 ILCS 5/24 (West 1992).

■ Since an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created. (*Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 171.) Section 5(d) of the Act provides that "[t]he Board shall have authority to conduct hearings upon complaints charging violations of this Act or of regulations thereunder." (415 ILCS 5/5(d) (West 1992).) A reading of other sections of the Act reveals an intention on the part of the legislature to create a general statutory prohibition. For example, section 9 of the Act provides: "[n]o person shall: (a) [c]ause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, *or so as to violate regulations or standards adopted by the Board under this Act.*" (Emphasis added.) 415 ILCS 5/9(a) (West 1992).

●3 When interpreting a disputed statutory provision, the court must ascertain and give effect to the true intent and meaning of the legislature, considering first the statutory language. (*Waste Management of Illinois, Inc. v. Illinois Pollution Control Board* (1991), 145 Ill. 2d 345, 348.) Those terms which are unambiguous, when not specifically defined, must be given their plain and ordinary meaning. (*Waste Management of Illinois, Inc.*, 145 Ill. 2d at 348.) The court will not insert words into legislative enactments when the statute otherwise presents a cogent and justifiable legislative scheme. 145 Ill. 2d at 348.

In contrast with section 9, dealing with air pollution, the plain language of section 24 provides no general cause of action under the Act. Therefore, the Board correctly concluded that petitioners had no cause of action under section 24 of the Act.

■ We also reject petitioners' argument that they have a cause of action pursuant to Board Rule 102. Rule 102 provides as follows:

"No person shall cause or allow the emission of sound beyond the boundaries of his property, as property is defined in Section 25 of the Illinois Environmental Protection Act, so as to cause pollution

in Illinois, or so as to violate any provision of this Chapter." (35 Ill. Adm. Code § 900.102 (1991).)

Petitioners maintain that Rule 102 was intended to give a regulatory cause of action prohibiting noise pollution as defined by the standards set forth in the Act. Moreover, petitioners also take the position that Rule 102 is not subject to the exemptions found in sections 25 and 3.25 of the Act. (415 ILCS 5/25, 3.25 (West 1992).) We disagree.

This court has already determined that Rule 102 is subject to sections 25 and 3.25. In *Hinsdale Golf Club v. Kochanski* (1990), 197 Ill. App. 3d 634, Kochanski, the property owner, filed a complaint with the Board alleging that skeet shooting activities conducted by the golf club emanated impulsive noise onto the neighboring property in violation of Rule 102. This court, having determined that the golf club's skeet shooting was an activity exempted under sections 25 and 3.25 of the Act, held that the Board's regulations did not apply. See also *People v. Pollution Control Board* (1984), 129 Ill. App. 3d 958.

■ Next, petitioners contend that the Board erred in determining that the Club was exempted from the Board regulations. Section 25 provides in pertinent part as follows:

"No Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to any organized amateur or professional sporting activity except as otherwise provided in this Section." (415 ILCS 5/25 (West 1992).)

The Act defines organized or professional sporting activity as:

"an activity or event carried out at a facility by persons who engaged in that activity as a business or for education, charity or entertainment for the general public, including all necessary actions and activities associated with such an activity. This definition includes, but is not limited to, skeet, trap or shooting sports clubs in existence prior to January 1, 1975, organized motor sports, and sporting events organized or controlled by school districts, units of local government, state agencies, colleges, universities or professional sports clubs offering exhibitions to the public." 415 ILCS 5/3.25 (West 1992).

■ Petitioners argue that the Club is not exempt under the Act because it was not *in existence* prior to January 1, 1975, since it moved from Northbrook to Hainesville in 1987. In *Hinsdale Golf Club* this court noted that prior to the 1981 amendment section 25 provided that the Board's standards and regulations did not apply to "skeet, trap or shooting sports clubs *chartered and operational prior to January 1, 1975, which are situated in the same location in which they were situated prior to January 1, 1975.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 111$^{1}$/$_{2}$, par. 1025.) Public Act 82—654 amended

section 25 to provide simply that "no Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to *any* organized amateur or professional sporting activity." (Emphasis added.) *Hinsdale Golf Club*, 197 Ill. App. 3d at 638.

The elimination of the reference to location of clubs, such as the one in the instant case, indicates that the legislature did not intend to restrict a club to its pre-1975 location. Contrary to petitioners' argument, the term "existence" does not refer to a specific physical location. See Webster's Third New International Dictionary 796 (1986).

In its May 5, 1994, opinion, the Board found that the Club was founded in 1944 and had been continuously involved in skeet and trap shooting. We conclude that the shifting of locations did not prevent the Club from being exempt under section 25 of the Act.

Although not a basis for our decision here, we note that a recent amendment to the Act is supportive of the result reached in this case. Public Act 88—598, effective date August 31, 1994, amends section 3.25 of the Act to provide, *inter alia*, that the definition of "organized amateur or professional sporting activity" now includes, but is not limited to, "(i) rifle and pistol ranges, licensed shooting preserves, and skeet, trap or shooting sports clubs in existence prior to January 1, 1994."

■ Next, petitioners contend that the Board erred in extending the exemption created under sections 25 and 3.25 of the Act to a second party where the shooting activities were established after January 1, 1975. We have previously determined that the Club was in existence prior to January 1, 1975. Moreover, the Village filed a motion to dismiss in this case, alleging that it had no ownership interest in the Club. While petitioners categorize the Village as "a continuing beneficiary and active participant in the establishment of shooting facilities within the Village," they offer no evidence to support such allegations. The fact that the Village may have assisted the Club in the setting up of the facilities does not establish that the Village is responsible for the amount of noise resulting from the use of those facilities.

■ Next, petitioners contend that the Board erred in failing to apply all of the necessary criteria in determining that the Club was exempted under sections 25 and 3.25 of the Act. Petitioners maintain that in order to qualify for the statutory exemption the Club had to meet all of the following categories listed in section 3.25: (1) "activity or event"; (2) "at a facility"; (3) "by person"; (4) "engaged in the activity" (a) "as a business," (b) "for education," (c) "charity," (d) "or the entertainment of the general public." Petitioners point out that

there is no evidence in the record that the gunfire noise is from "persons who engaged in that activity as a business or for charity or entertainment for the general public."

It is well established that in construing a statute the more specific terms prevail over the more general. (*Hinsdale Golf Club*, 197 Ill. App. 3d at 639.) Petitioners argue that the above principle does not apply in this case because the provisions are not in conflict (*Board of Education of Minooka Community High School District No. 111 v. Carter* (1983), 119 Ill. App. 3d 857, 862), and because the categories found in section 3.25 are not alike (*City of Lake Forest v. Pollution Control Board* (1986), 146 Ill. App. 3d 848, 855). However, both cases are distinguishable from the present case and cannot be said to limit the application of the above principle as petitioners suggest.

Moreover, this court has previously applied the above principle in construing section 3.25 of the Act. In *Hinsdale Golf Club*, we held that "the specific examples of the excluded activities provided in the second sentence of section 3.25 prevail over the more general definition provided in the first sentence." (197 Ill. App. 3d at 639.) Petitioners argue that *Hinsdale Golf Club* is distinguishable from the present case because there was no issue as to the existence of "skeet, trap or shooting club." Petitioners miss the point. It is the interpretation of section 3.25 in that case that is significant.

■ Next, petitioners contend that the Board erred in finding that the Club was a "skeet, trap or shooting sports club" because the Club's articles of incorporation make no reference to any "shooting" activity. Nowhere in section 3.25 is there a requirement that in order to qualify for the exemption a club's articles of incorporation must make a specific reference to "shooting activities." In the present case, the Club's articles of incorporation do provide as follows:

> "I. Promotion of interest in and appreciation of *all general sports activities through meets, outings and tournaments.*" (Emphasis added.)

The above statement is broad enough to include skeet and trap shooting, which the Board found the Club had been involved with since 1944 when the Club was founded. Therefore, we conclude that the Club's failure specifically to include a reference to "shooting activities" in its articles of incorporation does not render the exemption under the Act inapplicable to it.

We further reject petitioners' argument that the Board's decision is based on inconsistent reasoning, since we have previously rejected their argument that the Club was not in existence prior to January 1, 1975.

■ Next, petitioners contend that the Board erred in placing the

burden of proving that the Club was not exempt under the Act on them rather than on the Club. In its January 20, 1994, order, the Board instructed the parties to address the issue of whether the Board had jurisdiction over the petitioners' noise complaint. Both parties filed extensive responses. In its May 5, 1994, order, the Board stated as follows:

> "The complainants set forth several arguments in their response on the issue of the [sic] whether [Club] is a skeet shooting club. Those extensive arguments will not be repeated here; however, after careful review, the Board does not find the arguments convincing. The [Club] was founded in 1944 and has been continuously involved in skeet and trap shooting. The property includes a clubhouse and regularly scheduled shooting activities. The Board finds nothing in the record which would lead it to determine that the [Club] was not a skeet or trap shooting club. Therefore, the [Club] is not subject to the Board's standards."

While the Board's use of the "negative" in determining that the Club was a skeet or trap club might indicate that petitioners were considered to have the burden of proof, the fact that the Board found their arguments unpersuasive does not lead to the conclusion that the Board imposed the burden of proving that the exemption did not apply on petitioners. While petitioners argue that, as a result, the conclusions the Board drew are reversible on the grounds of being arbitrary or unreasonable, on the contrary, we find the Board's conclusions amply supported by the record in this case.

 Finally, the petitioners contend that sections 25 and 3.25 are unconstitutional.

Petitioners argue that the 1981 amendment to section 25 was a retroactive law that deprived them of vested rights. Petitioners point to the fact that petitioner Leckman purchased his property in 1975, prior to the 1981 amendment.

It is true that the legislature cannot pass a retrospective law impairing the obligation of a contract nor deprive a party of a vested right. (*Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 905.) A vested right is more than a mere expectation based upon an anticipated continuance of existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property. (*Griffin*, 112 Ill. App. 3d at 905.) If an existing law changes by amendment or repeal prior to the vesting of a right, no cause to object arises. 112 Ill. App. 3d at 905.

There is no vested interest in the continuance of a law or statute. (*O'Connell Home Builders, Inc. v. City of Chicago* (1981), 99 Ill. App. 3d 1054, 1060.) We note as well that a property owner's right to use

his property as he chooses is subordinate to the State's right to regulate that use for the protection of the general welfare. *Beeding v. Miller* (1988), 167 Ill. App. 3d 128, 141.

We conclude, therefore, that the petitioners had no vested rights in maintaining section 25 in its preamendment form.

Next, petitioners argue that the exemption created by section 25 is special legislation which is prohibited by the Illinois Constitution. Ill. Const. 1970, art. IV, § 13.

Special legislation confers a general privilege or benefit on a person or group of persons to the exclusion of others similarly situated and discriminates in favor of a select group without a reasonable basis. (*Beeding*, 167 Ill. App. 3d at 142.) A general law is a law that by its terms applies to all who are in a like position who are similarly situated. *Times Mirror Cable Television of Springfield, Inc. v. First National Bank* (1991), 221 Ill. App. 3d 340, 347.

We are of the opinion that section 25 is a general law rather than a "special" law, as argued by petitioners. It treats all organized sporting activities in the same manner; they are all exempted from the Board's regulations as to noise emissions. *Cf. Times Mirror Cable Television of Springfield, Inc.*, 221 Ill. App. 3d at 348.

Petitioners maintain that there is no compelling State interest in exempting certain sporting activities from an applicable general State law. However, where the statute involves neither a suspect classification nor a fundamental right, the rational basis test is applicable. *Beeding*, 167 Ill. App. 3d at 141 (this court rejected the argument that the right to use, possess, enjoy, and dispose of property was a fundamental right).

The petitioners argue that the Board's construction of the definition contained in section 3.25 fails to include any rational basis for the exemption because it omitted the qualifying criteria "as a business or for education, charity or entertainment for the general public." However, we have previously determined in this case that the "qualifying criteria" were general definitions of the activities exempted, over which the specific examples of the excluded activities prevailed. See *Hinsdale Golf Club*, 197 Ill. App. 3d at 639.

Finally, while the petitioners argue that there is no rational basis for exempting certain sporting activities from an applicable general law, they fail to demonstrate the arbitrariness and unreasonableness of these sections of the Act. In other words, the petitioners question the wisdom and propriety of the General Assembly's removal of such sporting events from the Board's regulation of noise emission. This is an assertion this court cannot consider. *Pollution Control Board*, 129 Ill. App. 3d at 964.

774

We conclude that sections 25 and 3.25 of the Act are not unconstitutional.

We note that in their reply brief the petitioners contend that the recent amendment to section 3.25 is unconstitutional. (Pub. Act 88—598, eff. August 31, 1994.) However, as stated above, our decision in this case is not based upon this recent amendment to section 3.25 of the Act. Therefore, we do not reach the merits of this issue.

The decision of the Board is affirmed.

Affirmed.

INGLIS and THOMAS, JJ., concur.