661 N.E.2d 496 (1996)
277 Ill. App.3d 832
214 Ill.Dec. 642
VILLAGE OF SCHAUMBURG, a municipal corporation, and George Longmeyer, Plaintiffs-Appellants,
v.
Becky DOYLE, as Director of the Department of Agriculture of Illinois, and not personally, Defendant-Appellee.
No. 1-94-0460.
Appellate Court of Illinois, First District, First Division.
February 5, 1996.
*498 Jack M. Siegel, Altheimer & Gray, Chicago, for plaintiffs-appellants.
Jim Ryan, Attorney General, State of Illinois; Rosalyn B. Kaplan, Solicitor General; Daniel N. Malato, Asst. Attorney General, of counsel, for defendant-appellee.
Justice WOLFSON delivered the opinion of the court:
In the spring of 1993 the Illinois Legislature was concerned about the lack of a statewide policy for the regulation and use of pesticides. Units of local government were free to establish their own regulatory schemes for pesticide use. Many did, including the Village of Schaumburg, a home rule unit. Nothing in the Illinois Pesticide Act (415 ILCS 60/1 et seq. (West 1992)) prevented local regulation.
*499 The legislature addressed its concern in P.A. 88-345, an amendment to section 3 of the Pesticide Act (P.A.). Effective August 13, 1993, subsection 4 of section 3 prohibits the regulation of pesticides by any political subdivision, including home rule units, except for counties and municipalities with a population of more than two million. 415 ILCS 60/3(4) (West 1992).
It is undisputed that Cook County and the City of Chicago are the only "counties and municipalities" with a population of more than 2,000,000.
The Village of Schaumburg and its village manager filed a declaratory judgment action against Becky Doyle, Director of the State of Illinois Department of Agriculture. Doyle is charged by statute with the enforcement of the Pesticide Act. The plaintiffs, claiming the amendment is unconstitutional, sought to enjoin that enforcement.
Plaintiffs make three arguments against the constitutionality of P.A. 88-345:
1. The amendment violates the due process and equal protection clauses of the Federal and State constitutions;
2. The amendment violates the Illinois constitution's prohibition against special legislation;
3. The amendment violates the Illinois constitution's provision concerning the amendment of other statutes, in this case the Lawn Care Products Application and Notice Act (LCPANA). See 415 ILCS 65/1 et seq. (West 1992).
The defendant filed a motion to dismiss the declaratory judgment action pursuant to 735 ILCS 5/2-615 (West 1992), alleging the complaint failed to state a cause of action. The trial judge agreed and dismissed the action.
We affirm the trial judge's decision.

OPINION

1. The Plaintiffs' Standing To Sue.

Serious standing questions attend the plaintiffs' lawsuit.
The defendant contends the Village has no authority to challenge the right of its creator, the General Assembly, to enact the legislation at issue. Plaintiffs answer that where they allege that a State official, such as Doyle, or a State agency is about to exercise powers granted by an unconstitutional statute, a suit in equity is not a suit against the State and may be maintained.
The weight of authority in this State supports the proposition that a municipality may not attack an act of the General Assembly on due process or equal protection grounds, but may contend it is a victim of improper special or local legislation.
In Meador v. City of Salem (1972), 51 Ill.2d 572, 284 N.E.2d 266, the City contended a provision of the Illinois Municipal Code established an unreasonable and arbitrary classification and was vague, uncertain, and indefinite in its meaning, depriving it of its rights under the due process clauses of the Federal and Illinois constitutions. The court held the City had no standing to make those constitutional attacks on the statute, citing Williams v. Baltimore (1933), 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015, 1020:
"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."
Although Meador usually is considered a due process case, the city-defendant had made an equal protection argument against the statute.
The waters were muddied five years later in Cronin v. Lindberg (1976), 66 Ill.2d 47, 4 Ill.Dec. 424, 360 N.E.2d 360. There, the Supreme Court held a school board had no standing to question legislation on due process grounds, but could assert an equal protection claim if it is a member of a class being discriminated against. Cronin relied on three cases to support that proposition. None of the three cases concerned an equal protection claim. See Board of Education v. Bakalis (1973), 54 Ill.2d 448, 299 N.E.2d 737 (issues of church-state separation and special legislation); City of Carbondale v. Van Natta (1975), 61 Ill.2d 483, 338 N.E.2d 19 (issue of special legislative classification); and Leno v. St. Joseph Hospital (1973), 55 Ill.2d 114, 302 *500 N.E.2d 58 (suit by an individual, not a governmental agency).
Cronin ignored Meador. Cases decided after Cronin cited to Meador and ignored Cronin when deciding issues of standing.
Later in 1977, an appellate court held it to be the "settled law of Illinois" that a municipality may not assert due process or equal protection claims against State legislative action. People v. Valentine (1977), 50 Ill. App.3d 447, 452, 8 Ill.Dec. 696, 700, 365 N.E.2d 1082, 1086.
In 1979, an appellate court, citing Valentine, held that a municipality could not challenge rules of the Department of Public Aid on due process or equal protection grounds because a municipality is not a "person" within the meaning of those amendments. Franciscan Hospital v. Town of Canoe Creek (1979), 79 Ill.App.3d 490, 34 Ill.Dec. 738, 398 N.E.2d 413.
In City of Elgin v. County of Cook (1993), 257 Ill.App.3d 186, 195 Ill.Dec. 778, 629 N.E.2d 86, the City challenged a county zoning ordinance granting a special use permit to build a solid waste disposal facility. We held the City was not a "person" entitled to due process and equal protection rights under the Federal and Illinois constitutions.
It is clear that a municipality cannot assert a due process claim against State legislation. (See Village of Riverwoods v. Department of Transportation (1979), 77 Ill.2d 130, 136, 32 Ill.Dec. 325, 395 N.E.2d 555.) Whether the municipality can claim a denial of equal protection is a more difficult question.
Some Illinois Supreme Court decisions have decided the merits of a governmental unit's equal protection claim where the question of standing was not raised. County of Bureau v. Thompson (1990), 139 Ill.2d 323, 151 Ill.Dec. 508, 564 N.E.2d 1170; Village of Oak Lawn v. Rosewell (1986), 113 Ill.2d 104, 100 Ill.Dec. 556, 497 N.E.2d 734.
The issue is complicated by the fact that "[t]he concepts of equal protection and special legislation are closely related in Illinois law." (County of Bureau, 139 Ill.2d at 335, 151 Ill.Dec. 508, 564 N.E.2d 1170.) The two concepts are generally judged by the same standard. Nevitt v. Langfelder (1993), 157 Ill.2d 116, 125, 191 Ill.Dec. 36, 623 N.E.2d 281.
In Jahn v. Troy Fire Protection District (1994), 163 Ill.2d 275, 206 Ill.Dec. 106, 644 N.E.2d 1159, the issue was whether the Fire Fighter Liability Act had been repealed by implication in a later statute, as the District contended. The plaintiff contended the District, a unit of local government, could not raise an equal protection challenge because it is not a person. The court held it was improper to frame the issue as an equal protection problem. Standing exists, said the court, because the challenge "implicates no constitutional rights." Jahn, 163 Ill.2d at 279, 206 Ill.Dec. 106, 644 N.E.2d 1159.
In fact, the appellate court, citing Cronin v. Lindberg, had decided, despite "conflicting" authority, that the Fire Protection District did have standing to raise an equal protection claim. (Jahn v. Troy Fire Protection District (1994), 255 Ill.App.3d 933, 936, 194 Ill.Dec. 574, 627 N.E.2d 1216.) To that, the Supreme Court said:
"Although the District may have framed the issue in the trial court as an equal protection problem, that characterization was inappropriate." Jahn, 163 Ill.2d at 279, 206 Ill.Dec. 106, 644 N.E.2d 1159.
We read Jahn as inferring, at least, that the District could not have challenged the legislation on equal protection grounds.
There is, however, no impediment to a municipality's claim that a statute violates the special or local law provisions of the Illinois Constitution of 1970 (Article IV, section 13). In re Petition of the Village of Vernon Hills (1995), 168 Ill.2d 117, 212 Ill. Dec. 883, 658 N.E.2d 365; Urbana v. Houser (1977), 67 Ill.2d 268, 274, 10 Ill.Dec. 239, 367 N.E.2d 692; Carbondale v. Van Natta (1975), 61 Ill.2d 483, 338 N.E.2d 19.
In this case, we hold that the Village is not a "person" as that term is embraced by the equal protection provisions of the United States and Illinois Constitutions (Amendment XIV, section 1, United States Constitution; Article II, section 2, Illinois Constitution of 1970). The Village of Schaumburg has no *501 standing to pursue its due process and equal protection challenges to P.A. 88-345.
We will consider the special law and improper amendment issues raised by the Village, although we are troubled by another aspect of this case.
The Village seeks to enforce chapter 120 of its Code. Chapter 120 provides for the licensing and regulation of pest control operators and pesticide/herbicide applicators. Section 120.07 states:
"The rules and regulations relating to Illinois Pesticide Act of 1979 and the law relating to Illinois Pesticide Act of 1979 and all subsequent amendments are hereby adopted." (Emphasis added.)
Taken literally, section 120.07 means that the Village has adopted as part of its own ordinance the same statute it attacks in this lawsuit. Since the question of what that means has not been addressed by the parties, we will set aside our disquiet and move on to the remaining issues in this case.

2. Special Legislation.

The course of our analysis is well-charted by precedent.
We begin with the constitutional provision asserted by the Village.
Article IV, § 13 of the 1970 Illinois Constitution provides:
"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law can be made applicable shall be a matter for judicial determination."
A general law is a law that by its terms applies to all who are in a like position who are similarly situated. Shepard v. Illinois Pollution Control Board (1995), 272 Ill. App.3d 764, 773, 651 N.E.2d 555, 209 Ill.Dec. 377.
Article IV, section 13, prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. In re Petition of the Village of Vernon Hills (1995), 168 Ill.2d 117, 212 Ill.Dec. 883, 658 N.E.2d 365; citing Cutinello v. Whitley (1994), 161 Ill.2d 409, 417, 204 Ill.Dec. 136, 641 N.E.2d 360; Bridgewater v. Hotz (1972), 51 Ill.2d 103, 109-10, 281 N.E.2d 317.
The purpose of the special legislation provision is to prevent arbitrary legislative classifications; it does not prohibit all classification. Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360. In re Belmont Fire Protection District (1986), 111 Ill.2d 373, 379, 95 Ill.Dec. 521, 489 N.E.2d 1385.
The approach used to evaluate a special legislation challenge is similar to the approach used to evaluate an equal protection challenge. See Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365; DeLuna v. St. Elizabeth's Hospital (1992), 147 Ill.2d 57, 74-75, 167 Ill.Dec. 1009, 588 N.E.2d 1139; see also Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360; Nevitt, 157 Ill.2d at 125, 191 Ill.Dec. 36, 623 N.E.2d 281.
Legislative classifications are presumed valid. Any reasonable doubts are resolved in favor of upholding the classification. (Bilyk v. Chicago Transit Authority (1988), 125 Ill.2d 230, 125 Ill.Dec. 822, 531 N.E.2d 1.) A reviewing court, when evaluating a classification, must consider the broad discretion of the legislature to create statutory classifications for the general welfare. (Cutinello, 161 Ill.2d at 417-18, 204 Ill.Dec. 136, 641 N.E.2d 360.) As a general rule, courts will not interfere with the legislature's judgment unless the classification is clearly unreasonable and palpably arbitrary, and will resolve all reasonable doubts in favor of upholding the validity of the statute. People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc. (1986), 114 Ill.2d 252, 259, 102 Ill.Dec. 412, 500 N.E.2d 34.
A statute will be held unconstitutional as special legislation and violative of the equal protection guarantee only if it was enacted for reasons totally unrelated to the pursuit of a legitimate state goal. Bilyk, 125 Ill.2d at 236, 125 Ill.Dec. 822, 531 N.E.2d 1.
A statute will be upheld "if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute *502 is inapplicable." Bilyk, 125 Ill.2d at 236, 125 Ill.Dec. 822, 531 N.E.2d 1.
The party challenging the constitutionality of a statute bears the burden of establishing the unreasonableness of the legislative action. DeLuna, 147 Ill.2d at 67, 167 Ill.Dec. 1009, 588 N.E.2d 1139.
When the statute at issue does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate standard for review is the rational basis test. Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360; Nevitt, 157 Ill.2d at 125, 191 Ill.Dec. 36, 623 N.E.2d 281.
Under the rational basis test, a court must determine whether the classification at issue is rationally related to a legitimate State interest. (Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365; Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360.) A court of review will determine only whether a rational basis exists for the legislative action, not the wisdom of the classification. Cutinello, 161 Ill.2d at 422, 204 Ill.Dec. 136, 641 N.E.2d 360, citing Federal Communications Commission v. Beach Communications, Inc. (1983), 508 U.S. 307, 315, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221.
Whether a rational basis exists for a classification presents a question of law. Thus, our review is de novo. Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360.
The Supreme Court said in Vernon Hills:
"The Court has further defined the rational basis test when reviewing legislative classifications based upon population or reviewing legislative classifications based upon population or territorial differences. For at least half a century, this court has held that such a classification will survive a special legislation challenge only (1) where founded upon a rational difference of situation or condition existing in the persons or objects upon which the classification rests, and (2) where there is a rational and proper basis for the classification in view of the objects and purposes to be accomplished. [Citations.]" Vernon Hills, 168 Ill.2d at 123, 212 Ill.Dec. 883, 658 N.E.2d 365.
The rational basis test does not require the legislature to articulate the purpose or rationale supporting its classification, it requires only that there be a reasonable relationship between the challenged legislation and a conceivable, and perhaps unarticulated, governmental interest. Cutinello, 161 Ill.2d at 420, 204 Ill.Dec. 136, 641 N.E.2d 360, citing Nordlinger v. Hahn (1992), 505 U.S. 1, 14, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1, 15-16.
The Illinois Supreme Court recognizes that a legislative classification may be based on population. Cutinello, 161 Ill.2d at 418, 204 Ill.Dec. 136, 641 N.E.2d 360, (statute involving disability payments did not apply to home rule units with populations over one million); People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc. (1973), 56 Ill.2d 210, 306 N.E.2d 7 (statute involving tax rates only applied to race tracks located within 100 miles of cities with one million population or in counties of 500,000 population); Bridgewater, 51 Ill.2d 103, 281 N.E.2d 317 (statute involving election of county board members applied only to counties with a township form of government and a population of three million or less).
Population classifications distinguishing Chicago from the rest of the State are presumed valid and will be voided only when clearly arbitrary. Des Plaines Firemen's Association v. City of Des Plaines (1994), 267 Ill.App.3d 920, 928, 204 Ill.Dec. 831, 642 N.E.2d 732.
A statute will not be held invalid on special legislation grounds simply because it operates in limited portions of the State. (Nevitt, 157 Ill.2d at 125, 191 Ill.Dec. 36, 623 N.E.2d 281.) "To hold otherwise would mean that no population-based classification could survive constitutional challenge." Nevitt, 157 Ill.2d at 125, 191 Ill.Dec. 36, 623 N.E.2d 281.
In their lawsuit, plaintiffs contend the amendment to their Pesticide Act is special legislation because it exempts counties and municipalities with a population of more than 2,000,000. They say this classification is clearly arbitrary and unreasonable, and lacks any rational basis.
*503 The issue in this case, then, is whether the General Assembly could rationally exclude Chicago and Cook County from its plan to regulate pesticide use.
Because there is not and could not be a claim that P.A. 88-345 affects a fundamental right or establishes a suspect or quasi-suspect classification, we look to the rational basis test, bearing in mind it is the burden of the plaintiffs to establish a constitutional violation.
P.A. 88-345 was added to section 3 of the Pesticide Act. Section 3 charges the Illinois Department of Agriculture with the administration of the Act. The amendment at issue is:
"The regulation of pesticides by any political subdivision of this State, including home rule units, is specifically prohibited except for counties and municipalities with a population over 2,000,000. The regulation of pesticides under this Act is an exclusive power and function of the State, except as provided in this paragraph, and is a denial and limitation, under Article VII, section 6, subsection (h) of the Illinois Constitution, of the power of a home rule unit to regulate pesticides." 415 ILCS 60/3(4) (West 1992).
The purpose of the Pesticide Act is "to regulate in the public interest the labeling, distribution, use and application of pesticides * * *." (See sec. 2, Illinois Pesticide Act, 415 ILCS 60/2 (West 1992).) The Act recognizes that while pesticides are "valuable and necessary," it is "essential to our general health and welfare that they be regulated to prevent adverse effects on man and his environment." 415 ILCS 60/2 (West 1992).
The rational basis test does not require the legislature to explain why it drew the line at 2,000,000 people. (See Cutinello, 161 Ill.2d at 420, 204 Ill.Dec. 136, 641 N.E.2d 360.) Mathematical precision in creating a classification is not required. (Nevitt, 157 Ill.2d at 130, 191 Ill.Dec. 36, 623 N.E.2d 281.) This case is about legislative choice, and that choice "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Cutinello, 161 Ill.2d at 421-22, 204 Ill.Dec. 136, 641 N.E.2d 360.
In fact, we have some guidance for the legislative decision to exclude Cook County and Chicago from the statewide regulation policy.
It is clear from the Senate and House debates on P.A. 88-345 that legislators were worried about smaller units of local government going off on their own to regulate pesticides. Many would not have the expertise. Policies would vary from town to town or county line to county line. Two years earlier, the United States Supreme Court decided that local units of government could regulate pesticides without running afoul of Federal law. Legislators were responding to that decision. See Wisconsin Public Intervenor v. Mortier (1991), 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532.
For example, in the Senate:
"Senator Woodyard: * * * this had a ripple effect throughout many of the states in the United States, due to the fear that pesticides would try to be regulated by any unit of local government, sometimes without the technical orexpertise of knowledge to be able to regulate those pesticides * * *."
And Senator O'Daniel: "* * * I just think that if we tried to regulate pesticides in every little community and every township and all, it would be absolutely a nightmare. I think the Department of Agriculture should do this. And if we're concerned about underground water contamination, things of this nature, I think this isthis is something that should be regulated, because there's a lot of small communities that don't have the expertise to regulate these * * *." 88th Ill.Gen.Assem., Senate Debate, April 19, 1993, at 78-79.
The tenor of the debate in the House was much the same:
Representative Black: "* * * Just imagine what will happen if it doesn't pass and you have a patchwork system of law * * * You can use something in one township; you can't use it in others. You have to keep in mind, folks, there are 6,600 units *504 of local government in this state, and if you let each of them do their own thing on this particular piece of business, I'm telling you, it just won't work."
And Representative Woolard: "* * * let's think just for a second about the expertise that some of these small communities that might have the authority to allow something to happen that would be devastating to their community. I believe we and the Department of Agriculture and other environmentally sound agencies have better judgments and better abilities to make those determinations for the people of this state * * *." 88th Ill.Gen.Assem., House Debate, May 18, 1993, at 110-11.
We believe the Village of Schaumburg has not established in its pleadings that the General Assembly failed the rational basis test. A section 2-615 motion is a proper way to test the constitutionality of a statute. Terry v. Metropolitan Pier & Exposition Authority (1995), 271 Ill.App.3d 446, 208 Ill. Dec. 125, 648 N.E.2d 1047.
This is an issue that seriously implicates the health and welfare of Illinois residents. A statewide policy is a good idea. We will not second-guess the legislative decision that Chicago and Cook County, because of their sizeable populations, represent a rational difference of situation.
When we view the classification in light of the objects and purposes to be accomplished, we cannot say there is no rational basis for the classification.
It is not unreasonable to presume that large population centers will have the resources, expertise, and will to deal with the regulation of pesticides. State resources are limited. It is reasonable to avoid duplication of effort.
This is not a case where Cook County and Chicago receive a "special benefit or exclusive privilege * * * to the exclusion of others similarly situated." (Cutinello, 161 Ill.2d at 417, 204 Ill.Dec. 136, 641 N.E.2d 360.) In fact, Cook County and Chicago face a greater burden and responsibility because of P.A. 88-345. This case does not closely resemble Vernon Hills, where one county, by virtue of its population, was singled out for permission to consolidate its fire protection districts.
Nor does it make the Village's case to point out that it, like Cook County and Chicago, is a home rule unit. The legislature has the authority to restrict the exercise of virtually all home rule powers, and "we do not discern in the preemption provisions of section 6 [Ill. Const.1970, art. XIII, § 6] any general requirement that the legislature treat all home rule units alike for purposes of preemption." Nevitt, 157 Ill.2d at 133, 191 Ill.Dec. 36, 623 N.E.2d 281.
We do not dispute the plaintiffs' claim that the Village, with its population of about 70,000, has the ability and expertise to regulate pesticides. That is not our call to make. The legislature has spoken in a way that does not offend the Illinois constitution.

3. Improper Amendment

Plaintiffs contend the amendment to the Pesticide Act improperly amended the Lawn Care Products and Notice Act (Lawn Care Act) in violation of article IV, section 8 of the Illinois Constitution. That section provides that legislation "expressly amending a law shall set forth the sections amended."
Again, we turn to well-settled principles of statutory construction.
If there is doubt as to the construction to be given a legislative enactment, the doubt must be resolved in favor of an interpretation which supports the statute's validity. (Rehg v. Illinois Department of Revenue (1992), 152 Ill.2d 504, 512, 178 Ill.Dec. 731, 605 N.E.2d 525.) Statutes should be construed in conjunction with other statutes addressing the same subject. In re Application for Judgment and Sale of Delinquent Properties for 1989 (1995), 167 Ill.2d 161, 212 Ill.Dec. 215, 656 N.E.2d 1049.
The Lawn Care Act regulates the application of lawn care products, including pesticides. It, like the Pesticide Act, authorizes the Department of Agriculture to administer and enforce its provisions.
Various provisions of the Lawn Care Act refer to the Pesticide Act for definitions and exclusions. For example, "`Pesticide' means *505 any substance or mixture of substances defined as a pesticide under the Illinois Pesticide Act, as now or hereafter amended," (415 ILCS 65/2 (West 1992)), and "Applicators for hire must be certified and licensed by the Department under the Illinois Pesticide Act, as now or hereafter amended, before they can apply lawn care products to lawns." 415 ILCS 65/4 (West 1992).
The Pesticide Act represents a comprehensive and independent statement of practice and policy concerning pesticides. It does not purport to amend any existing statute and it is complete and intelligible in itself. (See Kane County v. Carlson (1987), 116 Ill.2d 186, 107 Ill.Dec. 569, 507 N.E.2d 482.) Under those circumstances, the legislation is valid, "although its effect may be to repeal, modify, or amend existing laws by implication." People ex rel. the City of Canton v. Crouch (1980), 79 Ill.2d 356, 377, 38 Ill.Dec. 154, 403 N.E.2d 242.
The posture of this case does not require us to determine the possible ways the Lawn Care Act is impacted by the Pesticide Act. Schaumburg's ordinance 120 does not depend on, rely on, or refer to the Lawn Care Act. The legislature has the authority to tell a home rule unit its authority is preempted in certain areas. The Pesticide Act accomplishes that purpose in a lawful way. Again, we note ordinance 120 adopts the legislation it now challenges as unconstitutional.
We find no improper amendment in this case.

CONCLUSION
For the reasons stated, we affirm the trial judge's order dismissing the plaintiffs' lawsuit.
AFFIRMED.
CAMPBELL, P.J., and BRADEN, J., concur.